**EX PARTE Heath SHIRES**

**NO. 02–16–00348–CR**

Court of Appeals of Texas,
Fort Worth.

DELIVERED: December 29, 2016

Richard Gladden, Law Office of Richard Gladden, Denton, TX, for Appellant.

Greg Lowery, Dist. Atty. Wise County, Decatur, TX, for State.

PANEL: DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

## OPINION

BONNIE SUDDERTH, JUSTICE

In two issues, Appellant Heath Shires appeals the denial of his petition for writ of habeas corpus. We affirm.

### Background

In October 2014, Appellant was indicted on four counts of sexual offenses against a minor. He was released on pretrial bail under conditions including that he consume no alcohol and that he commit no new offense.

On September 4, 2016, Appellant was arrested for the felony offense of driving while intoxicated (DWI) and released on pretrial bond in that case under conditions including that he consume no alcohol and that he install an ignition interlock device on any motor vehicle he operates. On September 6, 2016, the State filed a motion in this case requesting the trial court hold that Defendant's pretrial bond posted in this case was insufficient. During the September 12, 2016 hearing before the trial court, the parties stipulated that Appellant had violated the bond conditions. Appellant urged, however, that the trial court should not revoke Appellant's bond but should instead impose a condition that Appellant wear a SCRAM device that would monitor whether or not Appellant had been consuming any alcohol. Appellant's counsel further argued that article 1, section 11b of

the Texas constitution violates the right to bond under the 14th Amendment of the United States Constitution.

The trial court granted the State's motion to hold bond insufficient and agreed that the hearing on the State's motion could also serve as a hearing on Appellant's anticipated application for writ of habeas corpus. Appellant filed a petition for writ of habeas of corpus, which was denied by written order of the trial court. This case was submitted without briefs on September 26 and Appellant filed a post-submission brief. The State did not file a response.

### Discussion

Divided into two issues, Appellant argues that article 1, section 11b of the Texas constitution violates the 14th Amendment of the United States Constitution because it does not require the trial court to find by clear and convincing evidence that (1) the release of a pretrial detainee on bond would pose a substantial risk of harm to the community and (2) no conditions of pretrial release, if imposed, would reasonably assure the safety of the community. In particular, Appellant argues in his first issue that section 11b is unconstitutional on its face because its failure to require such findings by clear and convincing evidence violates principles of substantive due process. In his second issue, Appellant argues that section 11b is unconstitutional as it was applied to him because the trial court's failure to make such findings by clear and convincing evidence violated his rights to procedural due process. This appears to be an issue of first impression as it does not appear that

the court of criminal appeals, this court, or any of our sister courts has addressed these or similar arguments regarding section 11b.

Article 1, section 11b provides:

Any person who is accused in this state of a felony or an offense involving family violence, who is released on bail pending trial, and whose bail is subsequently revoked or forfeited for a violation of a condition of release may be denied bail pending trial if a judge or magistrate in this state determines *by a preponderance of the evidence* at a subsequent hearing that the person violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community.

Tex. Const. art. I, § 11b (emphasis added).[1]

### I. As applied procedural due process challenge

We first address Appellant's second issue arguing that section 11b is unconstitutional because it violated his 14th Amendment procedural due process rights as it was applied to him.

#### A. Express findings are not required

First, we must address whether express findings are required by section 11b. In construing both constitutional and statutory language, we are principally guided by the language of the text itself. *Johnson v. Tenth Jud. Dist. Ct. App. at Waco*, 280 S.W.3d 866, 872 (Tex. Crim. App. 2008) (noting that the text is "the best indicator of the intent of the framers who drafted it and the citizenry who adopted it"); *see also Mahaffey v. State*, 316 S.W.3d 633, 637 (Tex. Crim. App. 2010)

---

1. Section 11b was codified in article 17.153 of the code of criminal procedure with regard to certain offenses involving child victims younger than 14 years of age, including the four counts with which Appellant was charged in this case. Tex. Code Crim. Proc. Ann. art. 17.153(b) (West 2015). Appellant does not mention or address article 17.153 in his brief, and thus we have limited our discussion to his constitutional challenges to section 11b.

(noting that "the text of the statute is the law" and "the text is the only definitive evidence of what the legislators . . . had in mind when the statute was enacted into law") (citations omitted); *Booth v. Strippleman*, 61 Tex. 378, 380 (1884) ("constitutions, like statutes, must be construed . . . with the view of arriving at and enforcing the intention of the convention"). When considering the literal text, we read it in context and construe it according to the rules of grammar and common usage. *Baird v. State*, 398 S.W.3d 220, 228 (Tex. Crim. App. 2013). Additionally, we construe constitutional provisions liberally. *See Robinson v. Hill*, 507 S.W.2d 521, 525 (Tex. 1974).

By its express terms, section 11b does not require the trial court to make "findings," either oral or written. Instead, this constitutional provision requires only that the court *determine* by a preponderance of the evidence at a subsequent hearing that the person violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community. Tex. Const. art. I, § 11b. Likewise, in enacting article 17.153, the legislature did not engraft into the statute a requirement that a trial court make express findings. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 38.22 (West Supp. 2016) (requiring the trial court to enter an order stating its conclusion as to whether a statement by the accused was voluntarily made along with specific findings of fact); *Id.* art. 64.03(a) (West Supp. 2016) (requiring the court to make certain findings in ruling on a postconviction motion for forensic testing).

■ We review the trial court's denial of habeas corpus relief for an abuse of discretion. *See Ex parte Flores*, 483 S.W.3d 632, 638 (Tex. App.–Houston [14th Dist.] 2015, pet. ref'd); *see also* Tex. Const. art. I, § 11b (providing that the denial of bail is within the trial court's discretion—a defendant *may* be denied bail pending trial). In conducting a review under the abuse of discretion standard, we must "defer to implied factual findings supported by the record," *Flores*, 483 S.W.3d at 638, and it is the Appellant's burden to show that the trial court abused its discretion. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).

■ Here, Appellant did not request express findings of fact and conclusions of law. When the record is silent on the reasons for the trial court's ruling or when the trial court makes no explicit fact findings and neither party has timely requested findings and conclusions from the trial court, we imply the necessary fact findings to support the trial court's ruling if they are supported by the record. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *see also State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (holding that, in the context of a motion to suppress ruling, even though the trial court had no obligation to make findings of fact or conclusions of law, nevertheless the trial court must do so when timely requested by the losing party).

■ We disagree with Appellant's assertion within the argument of his first issue that the record does not support a finding that the trial court determined that Appellant violated a bond condition related to the safety of the victim or the community. Assuming the evidence supports such findings, we may imply the necessary fact findings to support the trial court's decision to revoke Appellant's bond and decline to set new bail. *Kelly*, 204 S.W.3d at 818–19. Although the trial court initially expressed a concern—whether the DWI and the alleged charge of sexual assault shared a "nexus"—that did not reflect the

applicable standard under 11b.[2] Applying the proper standard, we can nevertheless find evidence in this record to support the trial court's conclusion. Based upon Appellant's stipulation that he violated his bond conditions by either consuming alcohol or driving while intoxicated, we can imply that Appellant's violation of the conditions prohibiting alcohol presented a danger to the community. *See, e.g., State v. Villarreal*, 475 S.W.3d 784, 808 (Tex. Crim. App. 2015) (recognizing that drunk driving presents a risk to community safety), *cert. denied*, — U.S. —, 136 S.Ct. 2544, 195 L.Ed.2d 869 (2016); *Ex parte Elliott*, 950 S.W.2d 714, 716 (Tex. App.–Fort Worth 1997, pet. ref'd) (upholding trial court's determination that imposition of a bail condition requiring an interlock device was appropriate for the safety of the community in light of defendant's history of DWI).

## B. Burden of proof and consideration of additional bond conditions

Appellant's argument is twofold: that section 11b violates the Due Process Clause because (1) it requires the trial court to apply a preponderance of the evidence standard rather than a clear and convincing evidence standard, and (2) it does not require the trial court to consider imposing additional bond conditions, such as the SCRAM device suggested in this case.

"The essential guarantee of the [Due Process Clause] is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures." *Long v. State*, 742 S.W.2d 302, 320 (Tex. Crim. App. 1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), *overruled on other grounds, Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). An as-applied challenge to the constitutionality of a law asserts that the law is unconstitutional as it was applied to the Appellant's particular facts and circumstances. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011).[3] In conducting a procedural due process analysis, we first determine whether a protected liberty or property interest exists and, if so, we then determine whether sufficient procedural safeguards are employed to assure the deprivation of that interest is not arbitrary. *Ex parte Montgomery*, 894 S.W.2d 324, 327 (Tex. Crim. App. 1995). In this case, the right to pretrial release on bail concerns a protected liberty interest. *United States v. Salerno*, 481 U.S. 739, 746–52, 107 S.Ct. 2095, 2101–104, 95 L.Ed.2d 697 (1987) (applying the compelling interest test); *Schall v. Mar-*

---

**2.** The trial court stated on the record that Appellant's "subsequent crime [the DWI], although frowned upon greatly by the Court and by society, is a felony but really has no nexus, to the Court's knowledge, to the original accusation ... brought against [Appellant]." The prosecutor responded by arguing that "[a]lcohol was involved [in the original charges of sexual assault a]nd that is why the Court imposed the condition of no alcohol in this particular case." The trial court then conceded that "there was some nexus as far as alcohol went, but it wasn't driving while intoxicated ...." The prosecutor then argued that the reason the trial court had included the bond conditions prohibiting alcohol consumption—including driving while intoxicat-

ed—was because alcohol was involved in the underlying assault charges. The court acknowledged that that "sounded familiar," and concluded, "[Appellant] has allegedly violated [the bond conditions], so the Court has granted the State's motion."

**3.** Although *Lykos* does not address challenges to state constitutional provisions, we do not find, nor have we found in our research, any reason that the analysis of an as-applied or facial challenge to a state constitutional amendment as violative of the U.S. Constitution would differ from the analysis of a constitutional challenge to a state statute.

*tin,* 467 U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984).

Section 11b requires the trial court to determine "by a preponderance of the evidence ... that the [defendant] violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community." Tex. Const. art. I, § 11b. Thus, before a trial court can revoke a defendant's bond and order the defendant held without bond when the defendant has violated a condition of his original bond, Section 11b requires the trial court to make an evaluation concerning the risk posed to the safety of the community and the victim.

Appellant relies primarily upon *Salerno* to argue that section 11b violates the Due Process Clause because it does not require the trial court to find by clear and convincing evidence that no additional bond condition could reasonably assure the safety of the community. But *Salerno* has limited applicability here. In *Salerno,* the Supreme Court specifically addressed the constitutionality of the federal Bail Reform Act (BRA), which required courts to detain prior to trial arrestees charged with certain serious felonies if the trial court found by clear and convincing evidence after an adversary hearing that no release conditions would "reasonably assure the appearance of the person as required and the safety of any other person and the community." 481 U.S. at 742, 107 S.Ct. at 2099 (citing 18 U.S.C.A. § 3141(a)). The Supreme Court held that the BRA did not violate the defendant's procedural due process rights, noting that it "need only find [the procedures of the BRA] 'adequate to authorize the pretrial detention of at least some persons charged with crimes,' ... whether or not they might be insufficient in some particular circumstances." *Id.* at 751, 107 S.Ct. at 2103 (citing *Schall,* 467 U.S. at 264, 104 S.Ct. at 2409). Among the procedural safeguards the Supreme Court noted was the requirement that the government prove its case by clear and convincing evidence. *Id.*

We disagree with Appellant's assertion that *Salerno* establishes the minimum requirements for due process protections in situations involving pretrial bail. *Salerno* addressed the particular provisions of a federal act, the BRA, and held that those provisions passed constitutional due process muster. *Id.* We do not read *Salerno* to require every trial court to apply a clear and convincing evidence standard, nor do we read *Salerno* to require each trial court to consider if additional bond conditions may adequately assure the safety of the community or the victim.[4] Appellant has not provided any Texas case law that would impose such a requirement. Further, the Supreme Court has upheld a preventive detention statute in the context of juvenile proceedings that did not require such an evaluation. *Schall,* 467 U.S. at 255, 104 S.Ct. at 2405 (upholding a New York statute that authorized pretrial detention of an accused juvenile delinquent based on a finding that there is a "serious risk" that the child "may ... commit an act which if committed by an adult would constitute a crime").

While *Salerno* concerned a federal act passed by Congress, at issue here is a provision of the Texas constitu-

---

4. Appellant additionally cites to decisions by the high courts in Massachusetts and Vermont to argue that *Salerno* set the minimum bar for due process guarantees in the context of pretrial bail. *See Aime v. Commonwealth,* 414 Mass. 667, 611 N.E.2d 204, 212 (1993);

*State v. Sauve,* 159 Vt. 566, 621 A.2d 1296, 1302–03 (1993). To the extent that those cases do so hold, we decline to follow those courts' extensions of *Salerno* beyond its plain holding.

tion. The people of Texas "can amend the Constitution in any particular that they desire," *Stephens v. State*, 138 Tex.Crim. 43, 133 S.W.2d 130, 131 (1939), even when a statute enacted for the same purpose would be unconstitutional, *Oakley v. State*, 830 S.W.2d 107, 109–10 (Tex. Crim. App. 1992). Our own constitutional provisions will not be held unconstitutional unless they subtract from the rights guaranteed by the United States Constitution. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). Thus, while we give great weight to the reasoning and holdings of the Supreme Court related to federal statutes, when it comes to our own constitution, "we must ultimately follow our own lights." *Olson v. State*, 484 S.W.2d 756, 762 (Tex. Crim. App. 1972) (op. on reh'g).

Additionally, as we have also previously discussed, we may imply the necessary fact findings in this case to support the trial court's decision. Even assuming the trial court was required to determine that no added condition could reasonably assure the safety of the community, that finding may be implied. The trial court was presented with evidence and argument by Appellant's counsel suggesting that an additional bond condition—requiring Appellant to wear a SCRAM device to monitor his alcohol intake—could reasonably assure the safety of the community, and the trial court noted that it received that evidence.[5] We may imply that the trial court found that the use of a SCRAM device did not reasonably assure the safety of the victim or the community. As the legislature noted in proposing section 11b, detainment offers protection "in a way that a bail bond, community monitoring, or even electronic monitoring never could." House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.J.R. 6, 80th Leg., R.S. (2007).

We therefore overrule Appellant's second issue because we hold that the application of section 11b did not violate Appellant's procedural due process rights.

## II. Facial substantive due process challenge

 Appellant's first issue also relies upon *Salerno* in arguing that section 11b is facially unconstitutional because it violates substantive due process guarantees by failing to require the trial court to find by clear and convincing evidence that Appellant poses a risk to the safety of the community and that no conditions of pretrial release, if imposed, would reasonably assure the safety of the community.

 To prevail on a facial challenge, a party must establish that the law always operates unconstitutionally in all possible circumstances. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *see also Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid.").[6] In considering

5. The evidence included what appears to be a brochure regarding SCRAM devices that describes various SCRAM systems that can be used. The brochure describes a Global Positioning System (GPS) model that allows "superior location monitoring accuracy and 2-way offender communication." The brochure states that with the system, testing is conducted as frequently as every 30 minutes, but it does not clarify whether the user of a SCRAM device would be constantly observed or that the police would be notified immediately in the event the user did consume alcohol in violation of his bond conditions. Further, use of the device would not guarantee that police would be available to respond quickly—if at all—to any such alerts.

6. Again, although these cases do not address challenges to state constitutional provisions, we have found no reason to deviate from the

a facial challenge, we presume that the law is valid and that the legislature did not act arbitrarily or unreasonably in enacting it. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). It is Appellant's burden, as the individual challenging the law, to establish its unconstitutionality. *Lykos*, 330 S.W.3d at 908; *Travelers Indem. Co. of Illinois v. Fuller*, 892 S.W.2d 848, 850 (Tex. 1995). Our analysis of whether section 11b violates substantive due process is similar to our analysis of Appellant's as-applied challenge regarding procedural due process rights. And for similar reasons, we reach the same result.

▆▆▆▆▆ In determining whether a law violates a defendant's substantive due process rights, we first determine whether a fundamental right or liberty interest is involved. *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997). A defendant's liberty interest is a fundamental right, and thus provisions restricting the right to bail pending trial have been evaluated using a strict scrutiny analysis. *Salerno*, 481 U.S. at 746–52, 107 S.Ct. at 2101–104 (stressing the "importance and fundamental nature" of an individual's interest in liberty and applying a strict scrutiny analysis to the BRA). In such an analysis, the State must show a compelling interest to curtail the individual's right and must do so as narrowly as possible. *Id.* at 746–52, 107 S.Ct. at 2101–104; *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993).

In evaluating the substantive due process concerns raised by the defendants in *Salerno*, the Supreme Court looked first to the legislative history of the statute to determine if Congress intended to impose punitive restrictions and whether "an alternative purpose to which the restriction

may rationally be connected is assignable for it." 481 U.S. at 747, 107 S.Ct. at 2101 (internal citation omitted). The Supreme Court then considered whether the regulation "appear[ed] excessive in relation to the alternative purpose assigned to it." *Id.*

▆▆▆▆▆ Here, however, we are not considering a federal statute, but our state constitution. Within the borders of our state, the Constitution of Texas is the supreme law of the land. *Oakley*, 830 S.W.2d at 109 (citing *Tex. Nat'l Guard Armory Bd. v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939)). While a state statute need only be passed by the legislature and approved by the governor, Tex. Const. art. 4, § 14, a constitutional amendment must not only be passed by both houses of the legislature, but must also be approved by the people of Texas, Tex. Const. art. 17, § 1.

> The people of Texas have the sole power to amend or change any provision of the [Texas] Constitution. ... By amending the Constitution, the people express their will or intent to change the fundamental law, and those who are called on to construe the Constitution should not thwart the will of the people by construing it differently from its plain meaning.

*Oakley*, 830 S.W.2d at 109 (citing *Stephens*, 133 S.W.2d at 130; *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 154 (1942)). Thus, while we may consider the proposed amendment's legislative history during the time it was considered by the legislature, we must also keep in mind that approval by the voters of Texas was also a necessary step in its enactment. There is no equivalent historical record of intent that is associated with the final step in the process of amending the constitution, the expression of the will of the people.

However, the legislative history does indicate that section 11b was enacted with a similar purpose to that of the BRA at issue

analysis used for as-applied or facial challenges to state statutes.

in *Salerno*—the protection of the safety of the community. Prior to the enactment of section 11b, even after a defendant's original bond had been revoked, he still had an arguable right to a new and reasonable bond. *See* Tex. Const. art. 1, § 11 (providing that all defendants are entitled to bail unless charged with capital offenses); *Ex parte Speicher*, Nos. 02–05–00466–CR, 02–05–00467–CR, 2006 WL 302325, at *1 (Tex. App.–Fort Worth, Feb. 9, 2006, no pet.) (mem. op., not designated for publication) ("Nothing in the code of criminal procedure suggests that a trial court may deny a defendant his constitutional right to bail pending trial ... when the defendant violates the conditions of the original bond."). In proposing the amendments to Section 11b, the legislature recognized that when an accused has demonstrated a reluctance to abide by reasonable conditions of bond, considerations of the safety of victims of family violence and the safety of the community as a whole should be considered before releasing the defendant into the community again. House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.J.R. 6, 80th Leg., R.S. (2007);[7] House Comm. on

Crim. Jurisprudence, Bill Analysis, Tex. H.J.R. 56, 79th Leg., R.S. (2005).[8] The proposed amendment was presented to voters in the 2007 election as "[t]he constitutional amendment authorizing the denial of bail to a person who violates certain court orders or conditions of release in a felony or family violence case." Tex. H.J. Res. 6, 80th Leg., R.S., 2007 Tex. Gen. Laws 33.

As *Salerno* noted, "There is no doubt that preventing danger to the community is a legitimate regulatory goal." *Salerno*, 481 U.S. at 747, 107 S.Ct. at 2101; *see also Schall*, 467 U.S. at 264, 104 S.Ct. at 2410 ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted.") (citing *De Veau v. Braisted*, 363 U.S. 144, 155, 80 S.Ct. 1146, 1152, 4 L.Ed.2d 1109 (1960)).[9] Thus, in applying *Salerno,* we must determine if section 11b appears excessive in relation to that goal. *Salerno*, 481 U.S. at 747, 107 S.Ct. at 2101.

To support his contention that section 11b is excessive in relation to the goal the legislature sought to achieve, Appellant argues that, unlike the federal statute, sec-

7. The 2007 committee bill analysis noted that the proposed amendment

would allow a judge to evaluate the threat a defendant presented to the victim and to the community. If, based on the information before the judge, the defendant was deemed to pose an unacceptable threat, the judge could deny the defendant bail, thus protecting the victim and the community in a way that a bail bond, community monitoring, or even electronic monitoring never could.

*Id.*

8. Section 11b was initially added to the Constitution in 2005 and applied to any person accused of a felony and permitted the trial court to deny bail if the person violated a condition of release "related to the safety of a victim of the alleged offense or to the safety of the community." Tex. Const. art. 1, § 11b (amended 2007). By subsequent amendment

in 2007, section 11b was expanded to also apply to persons accused of "an offense involving family violence." The preponderance of the evidence standard was also added during the amendment process of 2007. Tex. Const. art. 1, § 11b.

9. In arguing that the legislative history does not indicate such a purpose for Section 11b, Appellant relies upon decisions in other states that held detention is constitutionally permissible where a defendant has violated a bond condition when it is based on the court's authority to ensure compliance with its orders and preserve the integrity of the judicial process. *See, e.g., Paquette v. Commonwealth*, 440 Mass. 121, 795 N.E.2d 521, 530 (2003). Because the legislative history does establish an accepted, non-punitive purpose for the amendment—the safety of the victim and the community—we do not need to address this argument.

tion 11b does not require the trial court to find by clear and convincing evidence that release did not pose a danger to the safety of the community and no conditions of pretrial release would reasonably assure the safety of the alleged victim or the community. *See Salerno*, 481 U.S. at 742, 107 S.Ct. at 2099. But, as we have held above, *Salerno* did not go so far as to establish a clear and convincing evidence standard as a threshold requirement, nor did it mandate that a trial court determine that additional bond conditions would not adequately protect the safety of the community in order to satisfy due process concerns in the context of pretrial detention. Even assuming that it did, *Salerno* certainly did not address due process in the circumstances present here—where entitlement to reasonable bail is determined after violation of initial terms of the bail has occurred and the original bail has been revoked. Because *Salerno* merely evaluated the express terms of the BRA, a federal statute, and dealt only with restrictions regarding an accused's right to bail at the initial outset of criminal proceedings, we decline Appellant's invitation to extend *Salerno* to impose such requirements on section 11b of the Texas Constitution.

Appellant has not met his burden to show that section 11b is facially unconstitutional. We therefore overrule Appellant's first issue.

### Conclusion

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

DAUPHINOT, J., filed a dissenting opinion.

---

**1.** *United States v. Salerno*, 481 U.S. 739, 746–52, 107 S.Ct. 2095, 2101–04, 95 L.Ed.2d 697 (1987) (applying the compelling interest test); *Schall v. Martin*, 467 U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984).

**LEE ANN DAUPHINOT JUSTICE,** Dissenting

The right to pretrial release on bail concerns a protected liberty interest.[1] Article I, Section 11b of the Texas constitution requires the trial court to determine "by a preponderance of the evidence ... that the [defendant] violated a condition of release related to the safety of the victim of the alleged offense or to the safety of the community."[2] The majority concedes that Section 11b *requires* the trial court to make an evaluation concerning the risk posed to the safety of the community and the victim by the defendant's pretrial re-release after he has violated a bond condition.[3] The question remains whether the Texas constitution may provide the accused less protection than the United States Constitution. That is, may the trial judge's determination be based on a preponderance of the evidence, as section 11b provides, or must it instead be based on clear and convincing evidence?

Judge Cochran has previously reminded us of fundamental constitutional principles regarding pretrial incarceration:

> The early common-law history of the right to pretrial bail showed "a profound regard for a man's personal freedom." In England, a defendant who qualified for bail was "almost invariably" released by the sheriff, both for the sake of the accused, but also to avoid the "costly and troublesome" nature of imprisoning the accused. Because English sheriffs sometimes abused their power to grant bail, the 1275 Statute of Westminster authorized a general right to bail for all

---

**2.** Tex. Const. art. I, § 11b.

**3.** Majority Op. at 862.

offenses "for which one ought not to lose life nor member" or when the accusation was based on "light suspicion." During the early American era, state bail systems were used solely "to ensure the appearance of the accused at trial."

Beginning in the mid-twentieth century, Congress and the states began to authorize pretrial detention for certain particularly heinous crimes and particularly dangerous defendants, in part because some judges had intentionally set bail so high that a prisoner could not realistically pay it and thus courts were employing their own, unconstitutional form of pretrial detention. Not only did that ploy violate the Excessive Bail Clause of the federal constitution, it also "cast( ) doubt on the honesty of the American criminal justice system and prevent(ed) the development of objective standards of dangerousness."

Texas, like Congress, enacted constitutional provisions that allow pretrial detention without bail for some selected crimes and defendants and ensure that all other defendants may be released before trial under a personal recognizance bond or appropriate bail. Article 17.15 of the Texas Code of Criminal Procedure sets forth the proper criteria for determining bail. The "primary purpose" of bail is to ensure a defendant's presence at trial. And, as part of "the nature of the offense," the length of the potential sentence is one factor to consider in the bail-setting decision. Other "pertinent factors" include a defendant's family and community ties in the area, work record, length of residency, prior criminal record, and ability to make the bond. On appeal or in a habeas proceeding, the defendant has the burden to prove that bail is excessive.

However, the citizen who has been accused, but not convicted, has a "strong interest in liberty." Bail may not be used as "an instrument of oppression" to keep an accused "off the streets" or to coerce a plea. The Supreme Court has explained that "(t)he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness;" all the while he is "living under a cloud of anxiety, suspicion, and often hostility." In addition, a pretrial detainee is "hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." In balancing the accused's due-process interests and the community's safety interests, the Texas Legislature has statutorily ensured that a trial judge will, in the vast majority of cases, release a defendant pre-trial, while giving the trial judge appropriate tools to provide suitable oversight to prevent the accused from fleeing the jurisdiction, intimidating witnesses, committing crimes, or posing a realistic threat to the community.[4]

Appellant argues, in part, that to protect the constitutionality of Article I, Section 11b, it must be read in light of due process requirements. To do so, he argues, we must hold that pretrial incarceration without bail pursuant to this provision of the Texas constitution is permitted only when the trial court "find[s] 'by clear and convincing evidence' that: 1) release of a pretrial detainee on bond would pose a substantial risk of harm to the community; and 2) no conditions of pretrial release, if imposed, would reasonably assure the safe-

---

4. *Ex parte Benefield*, 403 S.W.3d 240, 241–43 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of PDR) (citations omitted).

ty of the community," as required by *United States v. Salerno*.[5] He alternatively contends that Article I, Section 11b of the Texas constitution facially violates the substantive due process component of the Fourteenth Amendment and that it has deprived him of procedural due process as applied. Finally, Appellant argues that the State offered no evidence, and the trial court made no finding, whether release of Appellant on bail would pose a threat to the safety of the community or whether any conditions of pretrial release could reasonably assure the safety of other persons and of the community.

That is, Appellant suggests that due process requires that, as courts, we apply the standard mandated by the federal constitution as explained by *Salerno*.[6]

If the floor, rather than the ceiling, of due process is established by the federal constitution, we must apply the reasoning of the *Salerno* court. The trial court can deny release on pretrial bond only when, after hearing the evidence, the trial court determines by clear and convincing *evidence* that the release of the accused on pretrial bond *would* pose a substantial risk of harm to the community and that no conditions of pretrial release, if imposed, would reasonably assure the safety of the community.[7] We do not need to reach Appellant's issues challenging the constitutionality of Section 11b. We simply need to apply Section 11b in light of the federal standard.

The State has the burden of proving the allegations of its motion. The trial court must be convinced *by the evidence* that the State has borne its burden. The issue is not whether some appellate court can, by speculation and reading between the lines, cobble together enough possibilities to support the State's allegations and to support a determination that the detainee must not be released under any conditions because no conditions exist that will reasonably protect the public. The record must reflect evidence from which the trial court can make the legally mandated determinations, and the trial court must actually make the necessary determinations.

Have we provided sufficient guidance to the trial bench in the past to explain what we believe the law requires? Probably not. Can we provide that guidance now? I believe that we should set out clearly what is required of the State, of the defense, and of the trial court. Then we should remand this case to the trial court to make determinations supported by the record and to enter appropriate orders. Both the trial bench and the trial bar are entitled to this clarity, and it is our obligation to provide it.

Because the majority does not remand this case to the trial court with clear instructions, I must respectfully dissent.

---

**5.** *See* 481 U.S. at 750–51, 107 S.Ct. at 2103.

**6.** *See id.*

**7.** *See id.*