

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00035-CR

———————————————————

JESSE SMITH, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. F17-1278-431

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In two issues, Jesse Smith appeals his conviction for violation of a protective order. First, he brings a facial constitutional challenge to the statute under which the protective order was issued. We hold that Smith has not carried his heavy burden to show the enabling statute operates unconstitutionally in every circumstance.

Second, Smith contends that his motion to recuse the trial judge should have been granted. Smith's case for recusal rests entirely on the trial judge's harsh comments. We hold that these remarks do not rise to a level that requires recusal. We therefore affirm.

## I. BACKGROUND

On October 14, 2016, police were dispatched to address a report of family violence at Smith's apartment. Smith's wife told police that he had hit her in the legs, arms, and stomach with a baseball bat. Smith was not at the scene, so police collected evidence and eventually left.

On November 5, 2016, police arrested Smith for aggravated assault. A municipal judge issued an emergency protective order the following morning. Among other things, the order forbade Smith from committing family violence against Wife and from going within 1,000 feet of Wife's residence, which, of course, was also Smith's residence.

The order was still active on November 19, 2016, when Wife's ex-husband came to check on her. Her ex-husband heard screaming from within Smith's apartment, so he called 911.

When an officer was dispatched to the apartment, he heard a female voice scream for help. The officer broke a window and gained entry into the apartment, where he found Wife bloodied and tied to the couple's bed, with Smith tightening her restraints. As relevant to this appeal, Smith was eventually charged with violation of a protective order, with an enhancement for a prior felony conviction.[1]

At trial, Wife testified that on November 19, 2016, she had responded to a knock at the door. Wife testified that as soon as she opened the door, Smith pushed his way in, threw her onto the floor, and began punching and kicking her. According to Wife, Smith told her that by calling the police, she had ruined his life, so he was going to take her life in return. By Wife's account, Smith then tied her to the bed and began cutting her with a knife while taunting her.

After the close of the evidence, the jury found Smith guilty of violating a protective order, and Smith elected to have punishment tried to the bench. Smith pleaded true to the enhancement paragraph. The trial judge assessed punishment at twenty years for the offense in question. Smith appeals.

## II.   CONSTITUTIONALITY OF THE PROTECTIVE ORDER STATUTE

In his first issue, Smith brings a facial challenge to the constitutionality of the statute under which the emergency protective order was issued: Article 17.292 of the Texas Code of Criminal Procedure. Smith asserts that because a protective order issued

---

[1]Smith was also charged with and convicted of two offenses of aggravated assault with a deadly weapon, but those convictions are at issue in separate appeals.

under Article 17.292 may temporarily prevent some arrestees from returning to their homes, without notice or an opportunity for hearing, the article runs afoul of due process[2] and Texas homestead protections.

Article 17.292 provides that when a person is arrested for certain offenses such as family violence, sexual assault, or stalking, a magistrate may issue an emergency protective order to safeguard the victim of the offense and the victim's family. Tex. Code Crim. Proc. Ann. art. 17.292(a). When, as here, the arrest is for family violence involving the use of a deadly weapon, the magistrate "shall" issue an emergency protective order remaining "in effect up to the 91st day but not less than 61 days after the date of issuance." *Id.* art. 17.292(b)(2), (j). The statute makes no allowance for notice and hearing before the protective order is issued. The magistrate may incorporate a number of restrictions within the order. *Id.* art. 17.292(c). As relevant

---

[2]In the trial court, Smith argued that the statute does not comport with "due process," a reference to the Due Process Clause of the United States Constitution. *See* U.S. Const. amend. XIV, § 1. On appeal, however, Smith has instead cited the due course of law provision of the Texas constitution—a matter he did not preserve in the trial court. *See* Tex. Const art. I, § 19. Smith has not suggested that there should be any "meaningful distinction" between these provisions as they pertain to the issues in this case. *See Fleming v. State*, 376 S.W.3d 854, 858 (Tex. App.—Fort Worth 2012) (quoting *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995)), *aff'd*, 455 S.W.3d 577 (Tex. Crim. App. 2014). Because his due course of law argument would not be preserved for our review, *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009), we will give Smith the benefit of the procedural doubt and construe his claim solely as a due process challenge. *See Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) (upholding the vitality of unassigned-error review).

4

here, the magistrate "may" prohibit the arrestee from "going to or near the residence . . . of the person protected under the order." *Id.* art. 17.292(c)(3)(A).

Smith observes that when the arrestee lives with the victim, a protective order prohibiting the arrestee from going near the victim's residence may temporarily prevent an arrestee from returning to his own home. According to Smith, the statute thus interferes with an arrestee's homestead rights under the Texas constitution.

The State responds that the homestead provisions of the Texas constitution protect property from forced sale "for the payment of . . . debts," and these provisions are therefore irrelevant here. Tex. Const. art. XVI, § 50(a). We agree that the scenario advanced by Smith has nothing to do with a forced sale for debts. Thus, homestead protections have no bearing.

Smith next argues that the enabling statute violates due process because an emergency protective order may deprive an arrestee of access to his residence without notice or the opportunity for a hearing before the deprivation occurs. Smith submits that the statute is therefore facially unconstitutional.

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533, 124 S. Ct. 2633, 2648 (2004) (plurality op.) (cleaned up) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985)). In "rare and extraordinary situations," deprivation of a protected interest need not be preceded by opportunity for some sort of hearing, and a

5

postdeprivation hearing will satisfy due process requirements. *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 243 n.2 (5th Cir. 2018) (quoting *Loudermill*, 470 U.S. at 542 n.7, 105 S. Ct. at 1493 n.7; *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 n.7, 92 S. Ct. 2701, 2705 n.7 (1972)); *see Bell v. Burson*, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591 (1971) (similar as to "emergency situations"); *see also Polley v. State*, No. 11-03-00340-CR, 2004 WL 2964785, at *2 (Tex. App.—Eastland Dec. 16, 2004, pet. ref'd) (not designated for publication) (concluding that a different protective order statute satisfied due process because it afforded the respondent notice and hearing before the issuance of the protective order).

Is an arrest for one of the offenses described by Article 17.292 the sort of extraordinary emergency that justifies a departure from the default rule of due process, which requires notice and an opportunity for hearing before the deprivation occurs? At least one Texas court has answered that question in the affirmative. *See Ex parte Flores*, 130 S.W.3d 100, 107 (Tex. App.—El Paso 2003, pet. ref'd). The *Flores* court concluded that Article 17.292 passed constitutional muster because of "the temporary and emergency nature" of the orders it provides. *Id.* The court further reasoned that the need for prompt assumption of judicial control following a family violence arrest outweighed the need to minimize risk of error through adversary procedures. *Id.*

We need not express any opinion on whether *Flores* was correctly decided. Rather, we will assume for the sake of argument that when an emergency protective order, without notice and opportunity for hearing, deprives a defendant of the ability

6

to enter his home, this would violate due process. Even operating under this assumption, Smith has not met his burden to demonstrate that the statute is facially unconstitutional.

Whether a statute is facially constitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Id.* at 14–15. Generally, a facial challenge to the constitutionality of a statute can succeed only when it is shown that the law is unconstitutional in all its applications. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015). "A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." *Ex parte Shires*, 508 S.W.3d 856, 863 (Tex. App.—Fort Worth 2016, no pet.) (quoting *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (op. on reh'g)).

Smith argues that the constitutional infirmity lies in circumstances where an emergency protective order would temporarily prevent an arrestee from returning home. But several applications of Article 17.292 would not result in this problem. For one, when the trial court issues an emergency protective order, the statute does not require the trial court to preclude the arrestee from going near the victim's home. Rather, the statute simply provides that the trial court "*may* prohibit the arrested party from . . . going to or near the residence . . . of the person protected under the order."

7

Tex. Code Crim. Proc. Ann. art. 17.292(c) (emphasis added). The word "may" is a permissive term, and thus a restriction on approaching the victim's residence is just one of many measures that the trial court might, in its discretion, include or exclude as the situation demands. *See Fienen v. State*, 390 S.W.3d 328, 332 (Tex. Crim. App. 2012). Even if the arrestee lives with the victim, then, the issuance of an emergency protective order will not necessarily preclude an arrestee from returning to his residence in every circumstance.

For another, when the trial court does include such a restriction in its protective order, this will not always result in the arrestee's exclusion from his home, because not every arrestee lives with his victim. Article 17.292 makes an emergency protective order available when a defendant is arrested for trafficking of persons, continuous trafficking of persons, sexual assault, indecent assault, aggravated sexual assault, and stalking. Tex. Code Crim. Proc. Ann. art. 17.292(a). These offenses could be, and often are, committed against victims who are not cohabitants with the arrestees.

The same holds true if we were to limit our consideration to arrests for family violence, because while in many cases a family violence victim does live with the offender, there is nothing in the definition of family violence that strictly requires the offender to cohabitate with the victim. *See* Tex. Fam. Code Ann. § 71.004. If the arrestee assaulted a victim with whom he had a dating relationship, for instance, the definition of family violence would be satisfied even if the arrestee did not live with the victim. *See id.* §§ 71.0021(a), 71.004(3). Thus, even within this narrower purview, not

every emergency protective order would deprive an arrestee of access to his home. *See Peraza v. State*, 467 S.W.3d 508, 520–21 (Tex. Crim. App. 2015) (concluding that even when narrowly focusing on a segment of a statute that ran a greater risk of unconstitutionality, the statute was nonetheless safe from facial challenge because some potential applications of that segment were constitutional).

Many if not most applications of the statute would not result in the problem of which Smith complains. *See Johnson*, 475 S.W.3d at 864. Smith has not argued that due process might be offended in circumstances when the arrestee is not dispossessed of his home, *see Shires*, 508 S.W.3d at 863, and we are under no obligation to construct such an argument for him. *See Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011). We therefore conclude that Smith has failed to overcome the presumption that Article 17.292 is constitutionally sound. *See Lo*, 424 S.W.3d at 14–15. We overrule Smith's first issue.

## III. RECUSAL

In his second issue, Smith contends that the administrative judge abused his discretion by not recusing the trial judge, Jonathan Bailey. Smith's attempt to recuse Judge Bailey from the case stemmed from multiple occasions when Smith protested the adequacy of his appointed counsel and demanded a new attorney. On two of these occasions, Judge Bailey actually granted Smith's motion and appointed new counsel. Nonetheless, Smith contends that when granting the second of these motions, Judge

9

Bailey made certain hostile remarks that demonstrate his bias and his status as a witness in a related grievance case.

Our account begins in July 2017, when Smith filed a motion to dismiss his first appointed counsel, Derek Adame. Smith alleged that Adame was deficient on several fronts: failing to provide Smith with important case documents, lying to Smith, and openly sharing evidence with the prosecution, among other misdeeds. Judge Bailey heard the motion in August 2017. Smith indicated that he had filed a grievance against Adame with the State Bar of Texas. Judge Bailey patiently explained that he believed the motion was "tenuous" but that "out of an abundance of caution and deference to your request, Mr. Smith, I'm going to give you the benefit of the doubt and I am going to substitute a new attorney to represent you." However, Judge Bailey cautioned Smith that he may not be afforded the same treatment if he subsequently filed another motion to discharge his second appointed counsel. Smith said he understood. Judge Bailey appointed a second counsel, J. Edward Niehaus.

Smith's trial was set for March 19, 2018. However, four days before trial, Smith filed a motion to discharge Niehaus. Smith alleged that, like his first counsel, Niehaus was dishonest, refused to share discovery, and caused Smith to withhold information for fear that Niehaus would share it with the prosecution. Smith alleged a litany of other problems as well. He asked for Niehaus to be discharged and for a third counsel to be appointed.

Judge Bailey heard Smith's motion on March 19, 2018—the morning trial had been set to begin. Smith informed the judge that he had filed a grievance against Niehaus. Judge Bailey reminded Smith that he gave Smith the benefit of the doubt at an earlier hearing. In the judge's view, Smith's untimely motion was "merely a ploy to delay the trial, because none of this was brought to the Court's attention at the time of the pretrial hearing that we just had a couple of weeks ago." He informed Smith that based on the court's file, it appeared that Niehaus "has worked harder than frankly I have ever seen an attorney work for someone outside of a death penalty case. Your attorney has provided you, from what I can observe in the court's record, a Cadillac level defense." Judge Bailey asked Smith whether there were any specific acts or omissions that justified a grievance against Niehaus.

Smith's complaints were manifold, but for each complaint, Niehaus offered a thorough response. For example, Smith testified that he had wanted to develop evidence about how an investigating officer had falsified his report. In response, Niehaus explained that he had looked into the matter extensively and reviewed over 200 pages of *Brady* materials concerning the officer, but he had found nothing relevant. At another point, Smith testified that Niehaus had failed to timely allow him to review discovery in the case. Niehaus disputed this as well, stating that he had spent twenty-four hours at the jail with Smith and given him close to 2,500 pages of discovery to review. As support, Niehaus offered into evidence his billing records, which

documented 168.51 hours of work on the case, including many notations concerning jail visits in which Niehaus reviewed the evidence and trial strategy with Smith.

After hearing the complaints and responses, Judge Bailey declared that Smith was mistaken to believe that Niehaus had done anything to deserve a grievance or motion to discharge:

> THE COURT: . . . And it seems to me that your ignorance of the law and your ignorance of procedure is what is causing half of the problems between you and counsel. Instead of trusting a good attorney to do their job for you, you are simply second guessing them, second guessing them based on your own ignorance.
>
> So what else? So far you have told me zero that would provide a good faith basis to file a grievance against counsel, much less to discharge him or continue your trial.

Judge Bailey expressed his "irritation" that Smith had not raised any of his complaints at the pretrial hearing. The judge then made the comments about which Smith complains on appeal:

> THE COURT: . . . So my question to you is, are you ready to represent yourself?
>
> THE DEFENDANT: I would not want to—
>
> THE COURT: Because I wouldn't want to waste any more of our tax dollars on an attorney when all you're gonna do is pick a fight with them and make complaints about them and thwart the entire process.
>
> THE DEFENDANT: No, sir, I do not want to represent myself. And if I were to get an attorney, I would know, if there was a disagreement, to work on it immediately instead of hoping that things were going to change.
>
> THE COURT: Well, there better not be a disagreement. Because at some point, if there's a problem between you and counsel, and that problem persists with a second or a third lawyer, at some point it's simply clear that

the problem isn't with the lawyer, the problem is with you. And, frankly, based on what you have told me, the problem here is with you. It is not with your attorney. Your ignorance and failure to trust your attorney's guidance is the problem here. And, yes, it irritates the hell out of me.

We will be selecting a new trial date. I'll be appointing a new attorney to represent you. You will get that information this morning before you're sent back over to the jail. Your trial is cancelled because we cannot proceed at this point based upon your filing of a grievance. I am ordering you not to file any further grievances against any further attorneys without this Court's permission. You are enjoined from filing any grievances with any other entity without this Court's permission.

So in the future, if you care to make a complaint about an attorney representing you, you are to submit that complaint to this Court for this Court to make a prima facie threshold determination of whether or not you should be permitted to file that complaint with the State Bar or any other entity, because it seems to me that you are doing nothing but standing in the way of the process. You're engaging in gamesmanship to simply delay your trial, and I'm not gonna tolerate it. Go with the sheriff.

(Defendant excused.)

THE COURT: Mr. Niehaus, you're dismissed. I'm happy to not only provide you the record if you need this relative to defending the grievance, but to the extent this Court needs to make any findings, formally or informally, simply extending my opinions on your behalf, please don't hesitate to ask.

Judge Bailey then appointed Heather Fisher to represent Smith.

Smith filed a pro se motion to recuse Judge Bailey based on his comments at the March 2018 hearing. The motion to recuse was referred to the presiding administrative judge, who denied the motion.

Later, Smith also made multiple attempts to discharge Fisher and have a fourth counsel appointed. Judge Bailey denied the requests and explained that Smith's only choices were to represent himself or to proceed with Fisher. After extensive back and

13

forth, Smith ultimately decided that he wanted Fisher to represent him. Smith then went to trial with Fisher and was convicted.

On appeal, Smith advances two theories as to why his motion to recuse should have been granted. First, he argues that when Judge Bailey offered to make findings in favor of Niehaus for purposes of defending the grievance, Judge Bailey effectively became a fact witness for Niehaus in regard to the grievance proceeding. Second, Smith asserts that Judge Bailey's antagonistic comments at the March 2018 hearing reveal his bias against Smith. Smith asserts that the judge's bias and status as a witness should have rightfully prevented him from presiding over the case.

We review an order denying a motion to recuse under an abuse of discretion standard. *Gaal v. State*, 332 S.W.3d 448, 456 (Tex. Crim. App. 2011). We will not reverse a ruling that falls within the zone of reasonable disagreement. *Id.* A Texas judge may be removed from presiding over a case for one of three reasons: he is constitutionally disqualified, he is subject to a statutory strike, or he is subject to statutory disqualification or recusal under Texas Supreme Court rules. *Id.* at 452. Rule 18b(b) of the Texas Rules of Civil Procedure sets out the applicable law concerning recusal and includes instances in which a judge must step down from hearing a case for reasons other than the disqualifying grounds listed in the constitution. *Id.* at 453.

Under Rule 18b, one ground for recusal occurs when the judge has been a material witness concerning the proceeding. Tex. R. Civ. P. 18b(b)(4). Smith submits that Judge Bailey should have been recused because he became a material witness when

14

he offered to render findings in favor of Niehaus. To be clear, though, Smith has not asserted that Judge Bailey actually rendered findings, let alone testified. Rather, according to Smith, the offer to render findings is enough to qualify the judge as a material witness and require recusal. For two reasons, we disagree.

First, rendering judicial findings is far different than giving testimony. To "testify" means to give evidence as a witness. *Nzewi v. State*, 359 S.W.3d 829, 842 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). A "finding" is a decision upon a question of fact reached as the result of a judicial examination or investigation by a court or jury. *Polk v. State*, 693 S.W.2d 391, 393 (Tex. Crim. App. 1985); *see Finding of Fact*, Black's Law Dictionary (11th ed. 2019) ("A determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record . . . ."). Thus, one is the act of giving evidence, upon which a judicial determination might rest; the other is the judicial determination itself. We therefore fail to see how rendering findings could qualify Judge Bailey as a material witness. And an *offer* to render findings is yet another step removed from what Smith must prove in order to recuse Judge Bailey as a witness.

Second, even assuming *arguendo* that Judge Bailey served as a material witness at a grievance proceeding against Smith's counsel, this is not the sort of fact that demands recusal by necessity and in every case. Rule 18b provides for recusal when a judge has been a material witness concerning "the proceeding," presumably meaning that recusal is required when the judge is a witness in the same proceeding over which he would otherwise preside. Tex. R. Civ. P. 18b(b)(4). But a grievance case would have been a

15

different proceeding than the criminal trial over which Judge Bailey presided. *See Sommers v. Concepcion*, 20 S.W.3d 27, 42 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (concluding that a judge's recusal from a suit was not required simply because he testified in a separate grievance proceeding). Many risks justify recusal when a judge proposes to testify in the same case over which he is presiding, but those risks are not present when the judge testifies in a different proceeding before another tribunal:

> A judge may assume the witness chair like anyone else, but he does not so easily lay aside robe and gavel. His testimony may appear to be more than mere opinion and may be mistaken for a judicial pronouncement.
>
> Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. That is, the relationship that develops between a judge and the lawyer who cross-examines him may influence the judge's conduct or judgment in other cases in which the attorney must appear before the judge.
>
> Not only are jurors likely to be influenced in their decision by the testimony of a judge on one party's behalf, they will see a judge appearing to take sides. The entrance of a judge into the litigation arena in aid of a combatant impacts not only the outcome of that conflict but the very idea of judicial impartiality.

*Id.* at 42–43 (cleaned up) (quoting *Joachim v. Chambers*, 815 S.W.2d 234, 237–39 (Tex. 1991) (orig. proceeding)). The textual and policy reasons for recusal are absent when a judge testifies in a grievance proceeding before another tribunal. We therefore hold that Judge Bailey's offer to render findings did not require recusal, even supposing that such an offer could qualify him as a material witness in a grievance proceeding.

Next, we consider Smith's argument that Judge Bailey's annoyed remarks at the March 2018 hearing demonstrate bias against Smith. Again, during the hearing, Judge Bailey variously referred to his "irritation" that Smith had not raised any of his concerns until just days before trial, his view that the motion was "gamesmanship" and a "ploy" to delay trial, his frustration that the motion was founded on "ignorance" about the quality of the representation, and his concern that appointing another counsel to represent Smith would be a "waste" of "tax dollars" because Smith would simply pick a fight with the third appointed counsel as well. Smith argues that these remarks reveal a lack of impartiality, to the point that Judge Bailey was very nearly "adversarial."

A judge must recuse if he has a personal bias or prejudice concerning a party. Tex. R. Civ. P. 18b(b)(2). Generally, recusal is not required when based solely on judicial rulings, remarks, or actions. *Gaal*, 332 S.W.3d at 454. An intemperate judicial remark

> can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. . . . Thus, a judge's remarks during trial that are critical, disapproving, or hostile to counsel, the parties, or their cases, usually will not support a bias or partiality challenge, although they *may* do so if they reveal an opinion based on extrajudicial information, and they *will* require recusal if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. On the other hand, expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women may display, do not establish bias or partiality.

*Id.* (cleaned up) (quoting *Liteky*, 510 U.S. at 555–56, 114 S. Ct. at 1157).

Judge Bailey's comments show significant frustration, but we do not believe that his annoyance escalated to a level that rendered a fair judgment impossible. *See id.* Judge Bailey's comments arose from developments in the case—Smith's apparent attempts to obstruct the process by discharging counsel on the eve of trial—and not from any extrajudicial source. *See Chisholm v. State*, No. 08-17-00258-CR, 2019 WL 3001515, at *2, *5 (Tex. App.—El Paso July 10, 2019, pet. ref'd) (not designated for publication) (rejecting a recusal appeal because the judge's frustrated comments—that a defendant was "manipulating the process" by repeatedly discharging counsel just before proceedings commenced—arose solely from developments in the case and not from extrajudicial sources). To an extent, Judge Bailey's frustration was understandable in light of Smith's repeated, untimely, and likely misguided attempts to discharge his court-appointed attorneys. *See Moreno v. State*, No. 07-16-00192-CR, 2018 WL 1547264, at *3 (Tex. App.—Amarillo Mar. 29, 2018, no pet.) (mem. op., not designated for publication) (upholding denial of recusal, in part because trial judge's extreme reaction was "understandable" based on the evidence before him). After the motion to recuse was denied, Judge Bailey proceeded to handle the trial in a seemingly fair and even-handed fashion. *See Wallace v. State*, No. 14-09-00378-CR, 2010 WL 2649939, at *3 (Tex. App.—Houston [14th Dist.] July 6, 2010, no pet.) (mem. op., not designated for publication) (affirming denial of recusal because after a judge's heated remarks at punishment, the judge proceeded to handle punishment fairly). And even after alleging bias, Smith elected to have Judge Bailey assess punishment, which is arguably some

18

indication that he did not believe Judge Bailey was truly biased against him. *See Simpson v. State*, No. 01-12-00380-CR, 2014 WL 2767126, at *2 (Tex. App.—Houston [1st Dist.] June 17, 2014, pet. ref'd) (mem. op. on reh'g, not designated for publication). It would be within the zone of reasonable disagreement, then, to conclude that Judge Bailey's anger shows that he was as imperfect as any other human, but still impartial. *See Gaal*, 332 S.W.3d at 456.[3] We therefore cannot agree that the administrative judge abused his discretion in denying the motion to recuse. *See id.*

We overrule Smith's second issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 6, 2020

---

[3]Briefly, Smith also argues that when Judge Bailey ordered him not to file any more grievances with the State Bar of Texas, this violated his due process rights. Smith offers no authority for this proposition. *See* Tex. R. App. P. 38.1(i). Moreover, Smith did not raise this argument in the trial court, and he thus gave the trial court no opportunity to rule on or remedy the supposed error. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). He therefore has not preserved this complaint for our review. *See id.* (holding that in absence of timely objection, due process complaint was not preserved for review).