

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-18-00163-CR
### NO. 02-18-00164-CR

EX PARTE TAYMOR TRAVON
MCINTYRE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NOS. 1511547D, 1511574D

----------

## OPINION

----------

### I. INTRODUCTION

Appellant Taymor Travon McIntyre perfected this interlocutory appeal from the trial court's order denying his pretrial application for writ of habeas corpus requesting that reasonable bail be set in his pending case for a capital murder and three counts of aggravated robbery occurring on or about July 26, 2016

(cause number 1511547D, "the capital murder case") and his pending case for one count of aggravated robbery and one count of aggravated assault with a deadly weapon committed in Arlington, Texas, on or about May 25, 2017 (cause number 1511574D, "the Arlington aggravated robbery case"). For the reasons set forth below, we affirm the trial court's order denying bail in the capital murder case, but we reverse the trial court's order denying bail in the Arlington aggravated robbery case and remand that case to the trial court for further proceedings.

## II. PROCEDURAL AND FACTUAL OVERVIEW

Appellant was sixteen years old when he allegedly committed these offenses. The capital murder case stems from a July 26, 2016 incident in which multiple suspects entered a house in Mansfield at 10:45 p.m., displayed their pistols, and demanded the occupants' cell phones and illegal drugs. During the robbery, the suspects fired their pistols, killing one of the occupants and wounding another. Appellant was identified as one of the suspects.

An arrest warrant issued for Appellant, and he was arrested and placed in the juvenile detention facility. After detention hearings, the juvenile court released Appellant pretrial to "home arrest" subject to conditions that included electronic monitoring via an ankle monitor. Despite signing the conditions of release and being informed that violations could result in the issuance of a directive to apprehend him and his subsequent arrest and detention, on March 27, 2017, Appellant cut off his monitor and fled.

2

Within a month of fleeing, Appellant became a suspect in—and has now been indicted for—a second capital murder in Bexar County. According to a Bexar County arrest warrant affidavit admitted into evidence at the writ hearing, Appellant and three others picked up a photographer for a photo shoot at a mall on April 23, 2017. The affidavit alleges that Appellant and one of the others pulled out guns and took the photographer's backpack containing his camera equipment. The other gun-bearing individual pistol-whipped the photographer and forced him from the car. The photographer attempted to get back into the car and eventually jumped on the hood. According to the affidavit, Appellant then leaned out of the window and shot the photographer, who died as a result of the gunshot.

A month after that incident, Appellant became a suspect in—and has now been indicted in—the May 25, 2017 Arlington aggravated robbery case. The details of that offense are not in the record before us.

Thus, Appellant has been indicted for two felony offenses—the Bexar County capital murder and the Arlington aggravated robbery—that were committed within two months of the date Appellant cut off his ankle monitor and fled. Approximately three months after Appellant cut off his ankle monitor and fled, on June 30, 2017, he was apprehended by the United States Marshals Service in Union County, New Jersey. He was returned to Tarrant County where he was incarcerated in the Tarrant County Jail on July 20, 2017. The juvenile court waived its jurisdiction and transferred Appellant's cases to the district court.

3

The State filed criminal complaints against Appellant in the capital murder case (noting bail was set in the amount of $500,000) and in the Arlington aggravated robbery case (noting "$0 bond"), and a Tarrant County grand jury returned indictments against Appellant in both cases on September 29, 2017. On February 7, 2018, the trial court *sua sponte* held the $500,000 bond previously set in the capital murder case to be insufficient and ordered that Appellant be held without bail in that case.

Appellant filed an application for a pretrial writ of habeas corpus in both cases[1] arguing that he is being illegally restrained because he has been incarcerated since July 20, 2017, without the setting of reasonable bail. Appellant requested in his application that the trial court set reasonable bail in both the capital murder case and the Arlington aggravated robbery case. The trial court conducted a hearing.[2]

At the hearing on Appellant's application for a pretrial writ of habeas corpus, evidence presented to the trial court established that after Appellant cut off his ankle monitor and fled, he wrote a song detailing his escapades. A New

---

[1]To avoid possible confusion on remand, Appellant's application for a pretrial writ of habeas corpus was filed in the trial court under the single cause number CDC2-C009483-00 but encompassed both the capital murder case and the Arlington aggravated robbery case.

[2]The hearing started on March 8, 2018, and concluded on April 3, 2018. The reporter's record of the April 3, 2018 conclusion of the hearing is only seven pages long and reflects that defense counsel simply tendered financial documents to the trial court that the trial court had ruled on March 8, 2018, that it would accept.

York lawyer represented Appellant in recording contract negotiations, and Appellant ultimately signed a three-year recording contract with 88 Classic for $600,000 or $700,000. Appellant also made a music video in which the trial court described Appellant as "pretty much bragging about the fact that he not only cut off his monitor . . . but he's standing around holding a .9 mm pistol . . . standing next to a poster of himself," which the trial court believed "came from the directive to apprehend."

Appellant's father and Appellant's uncle testified at the writ hearing. Appellant's father, Kevin Beverly, said that although he lived in McKinney, he had made arrangements to lease a home in Fort Worth so Appellant could live there with him if Appellant were released on bond. Beverly explained that Appellant's uncle had agreed to live with them if Appellant was released so that together they could provide continuous supervision of Appellant and make sure Appellant complied with all of the conditions of any bonds that are set. Beverly said that Appellant's recording contract was paying for his lawyers in Tarrant County and Bexar County and that as Appellant's legal guardian, he had transferred Appellant's assets to a trust.

Appellant's uncle testified that he lived in Florida and that he had retired from the Army after suffering injuries during combat. Since retiring from the Army, Appellant's uncle had worked in security contracting (protecting embassies and consulates) and executive protection (providing security for mayors, senators, artists, and other similar professionals). Appellant's uncle testified that

5

he was willing to move to Texas and live with Beverly. Appellant's uncle agreed that either he or Beverly would be in direct supervision of Appellant at all times and promised to make sure that Appellant observed every condition of any bonds that are set.

Defense counsel asked to provide additional information about the assets in Appellant's trust fund at a later date. The trial court agreed, and defense counsel provided that information at a subsequent, brief, on-the-record conclusion to the writ hearing. Defense counsel also requested that the trial court take judicial notice of Bexar County's placement of a juvenile hold on Appellant for the alleged capital murder of the photographer. According to defense counsel, even if the trial court set bail in Appellant's capital murder case and in his Arlington aggravated robbery case and even if Appellant posted bail, Appellant would not be released from custody but instead would be transported to Bexar County for a detention hearing in the juvenile court and possibly a hearing seeking a waiver of jurisdiction by the juvenile court and transfer of Appellant's case to a Bexar County district court for criminal prosecution. Only at that point, defense counsel argued, could Appellant seek bail in his Bexar County case and potentially be released.

The State offered and the trial court admitted the arrest warrant for Appellant in the capital murder case and the Bexar County capital murder arrest warrant for Appellant. The State's sole witness was Luis Montoya. Montoya testified that the juvenile system does not have bonds and that Appellant has

6

never been placed on a bond or bail. Montoya explained that Appellant's act of cutting off his monitor was a violation of his conditions of release and that the remedy for that violation was to issue a directive to apprehend.

The trial court made the following findings of fact and conclusions of law:

1. Applicant's date of birth is [redacted].

2. Applicant has been a runaway since July 4, 2014.

3. In Cause No. 1511547D, Applicant is accused in a four-count indictment alleging one count of capital murder and three counts of aggravated robbery.

4. In Cause No. 151157[4]D, Applicant is accused of one count of aggravated robbery and one count of aggravated assault.

5. Applicant previously removed his ankle monitor and fled while under house arrest as ordered by the juvenile court.

6. Applicant is alleged to have committed an additional capital murder and other felonious conduct after a directive to apprehend was issued following his absconding from house arrest by removing his ankle monitor.

7. According to the Noble Static Risk Assessment that was administered to Applicant, the classification reported for Applicant is "High Violent."

8. The nature of the alleged offenses and safety of the victim and community should be and has been considered on the issue of bond.

. . . .

For all the reasons stated above and by the Court on the record during the hearing on March 8, 2018, the relief requested by Applicant should be denied[,] and no bail amount should be set.

The trial court denied Appellant's application for a pretrial writ of habeas corpus ruling that "Applicant's requests for relief are **DENIED**[,] and no bail amount shall be set."

### III. THE TRIAL COURT'S DENIAL OF HABEAS RELIEF

In his sole issue, Appellant argues that the trial court abused its discretion by denying the relief requested in his application for a pretrial writ of habeas corpus and by holding him without bail in the two underlying felony cases in Tarrant County.

### A. Standard of Review

Generally, a ruling on a pretrial writ of habeas corpus is reviewed for abuse of discretion, viewing the facts in the light most favorable to the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). But when there are no disputed facts and the resolution of the ultimate issue turns on an application of purely legal standards, as here, our review is de novo. *See Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); *cf. Ex parte Jones*, 410 S.W.3d 349, 350 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 440 S.W.3d 628 (Tex. Crim. App. 2014). We will uphold the trial court's judgment if it is correct on any theory of law applicable to the case. *Ex parte Walsh*, 530 S.W.3d 774, 778 (Tex. App.—Fort Worth 2017, no pet.).

### B. Applicable Law

The Texas constitution provides, "All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this

provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." Tex. Const. art. I, § 11; *see also* Tex. Code Crim. Proc. Ann. art. 1.07 (West 2005) (setting forth provision similar to that in article I, section 11 of the Texas constitution). The Texas constitution also provides, however, that bail may be denied in certain circumstances. *See* Tex. Const. art. I, §§ 11a, 11b, 11c. One of the circumstances in which the Texas constitution authorizes denial of bail is when an accused has violated a condition of his pretrial release related to the safety of the community. *Id.* art. I, § 11b (titled "Violation of condition of release pending trial; denial of bail"). Article I, section 11b provides,

> Any person who is accused in this state of a felony or an offense involving family violence, who is released on bail pending trial, and whose bail is subsequently revoked or forfeited for a violation of a condition of release may be denied bail pending trial if a judge or magistrate in this state determines by a preponderance of the evidence at a subsequent hearing that the person violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community.

*Id.*

The United States and Texas constitutional right-to-bail provisions do not automatically apply to juveniles, as they do to adults. *See Ex parte D.W.C.*, 1 S.W.3d 896, 897 (Tex. App.—Beaumont 1999, pet. denied). This is because juvenile law is based on the doctrine of *parens patriae*—that is, the ideology that minors are subject to the control of their parents and when parental control falters, the State will take on the role of promoting and protecting the juvenile

9

child's welfare so that the minor's liberty interest is subject to the State's *parens patriae* interest. *See* Tex. Fam. Code Ann. § 53.02(b) (West 2014). *See generally* Tex. Att'y Gen. Op. No. JC-0229 (2000).[3] A juvenile may be released from juvenile detention prior to a delinquency hearing, however, and such release may be conditioned upon requirements reasonably necessary to insure the juvenile's appearance at later proceedings. Tex. Fam. Code Ann. §§ 53.02(a), 54.01(f) (West 2014). The conditions of the juvenile's release must be in writing and filed with the office or official designated by the court, and a copy must be furnished to the juvenile. *Id.* §§ 53.02(a), 54.01(f).

---

[3]The opinion explains,

[A]s the United States Supreme Court has recognized, unemancipated seventeen-year-olds' constitutional liberty rights are not as great as adults' and are subject to the control of their parents or guardians: "Traditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination -- including even the right of liberty in its narrow sense, i.e., the right to come and go at will. They are subject, even as to their physical freedom, to the control of their parents or guardians." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995). Furthermore, a child's liberty interest may, in appropriate circumstances, be subordinated to the state's interest in preserving and promoting the welfare of the child. *See Schall v. Martin*, 467 U.S. 253, 265 (1984) ("[J]uveniles, unlike adults, are always in some form of custody. Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as parens patriae. In this respect, the juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's 'parens patriae' interest in preserving and promoting the welfare of the child.") (citations omitted).

*Id.* at 6.

## C. Analysis

### 1. The Capital Murder Case

In the capital murder case, Appellant is charged with one count of capital murder and three counts of aggravated robbery for the events that occurred in Mansfield in July 2016. Appellant was placed in juvenile detention as a result of these offenses, was subsequently released on "house arrest," and was subject to conditions of release that included electronic monitoring via an ankle monitor. The State argues that Appellant's release from juvenile detention on the condition that he be electronically monitored twenty-four hours a day is equivalent to being "released on bail pending trial" for purposes of Texas constitution article I, section 11b's authorization of the denial of bail.

In support of this argument, the State's brief includes a helpful chart comparing juvenile predelinquency adjudication hearing release to adult pretrial bond release, which we have reformatted as follows:

| Juvenile Predelinquency Adjudication Hearing Release | Adult Pretrial Bond Release |
|---|---|
| Does not include money. *See* Tex. Fam. Code Ann. §§ 53.02, 54.01. | May or may not include money. *See* Tex. Code Crim. Proc. Ann. art. 17.03(a) (West Supp. 2017). |
| May include conditions. *See* Tex. Fam. Code Ann. §§ 53.02(a), 54.01(f). | May include conditions. *See* Tex. Code Crim. Proc. Ann. arts. 17.43–.47 (West 2015). |
| Conditions are used "to insure the child's appearance at later proceedings." Tex. Fam. Code Ann. §§ 53.02(a), 54.01(f). | Bail is the security given by the accused "that he will appear and answer before the proper court." Tex. Code Crim. Proc. Ann. art. 17.01 (West 2015). |
| May include house arrest and | May include house arrest and |

11

| | |
|---|---|
| electronic monitoring as a condition. *See generally* Tex. Fam. Code Ann. §§ 53.02(a), 54.01(f). | electronic monitoring as a condition. *See* Tex. Code Crim. Proc. Ann. art. 17.43. |
| Violating conditions of house arrest and electronic monitoring could result in apprehension. *See* Tex. Fam. Code Ann. § 52.015(a) (West 2014). | Violating conditions of house arrest and electronic monitoring could result in arrest. *See* Tex. Code Crim. Proc. Ann. art. 17.44(c)(1). |
| May require an adult to agree to produce the child at later proceedings under penalty of an order of contempt. *See* Tex. Fam. Code Ann. § 53.02(d). | Does not require an adult to agree to produce the accused at later proceedings under penalty of an order of contempt. |

The above comparison shows that juvenile predelinquency adjudication hearing release and adult pretrial bond release differ only in that (a) adult pretrial bond release typically includes security or money and (b) juvenile predelinquency adjudication hearing release may require an adult to agree to produce the child at later proceedings under penalty of an order of contempt. *Compare* Tex. Code Crim. Proc. Ann. art. 17.01, *with* Tex. Fam. Code Ann. § 53.02(d).

The State points out that the same major underlying purpose—assuring appearance at trial—is served by juvenile predelinquency adjudication hearing release and its conditions and adult pretrial bond release and its conditions. *See, e.g.*, Tex. Fam. Code Ann. §§ 53.02(a), 54.01(f); *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980) (stating that "[t]he primary purpose or object of an appearance bond is to secure the presence of a defendant in court for the trial of the offense charged"). Conditions of juvenile predelinquency adjudication hearing release serve the same purpose, apply similar requirements, and use similar punishments for violations as adult bail

conditions. The State argues that the above-charted procedural consistencies and the identical purposes underlying juvenile predelinquency adjudication hearing release and adult pretrial bond release render violations of conditions of juvenile predelinquency adjudication hearing release congruent with and interchangeable with violations of adult pretrial bond release for purposes of triggering possible denial of bail under section 11b of the Texas constitution. We agree. No distinction exists between juvenile predelinquency adjudication hearing release and adult pretrial bond release for purposes of article I, section 11b of the Texas constitution; indeed, the Texas Court of Criminal Appeals has declined to draw such a distinction between adults and juveniles certified to stand trial as adults in a similar situation. *See, e.g.*, *Ex parte Green*, 688 S.W.2d 555, 556–57 (Tex. Crim. App. 1985) (rejecting applying section 42.03 of the code of criminal procedure's credit-for-time-served provision differently to juvenile subsequently certified as an adult who had served time pretrial—even though juvenile was detained in juvenile detention facility, not jail—when juvenile was confined as a result of behavior which, if committed by an adult, would constitute a penal offense).[4]

---

[4]The Texas Court of Criminal Appeals explained,

Once a juvenile is "certified" as an adult . . ., it makes no difference that "said cause" began as a civil proceeding, [citation omitted], since "[o]n transfer of the child for criminal proceedings, he shall be dealt with as an adult and in accordance with the Texas Code of Criminal Procedure[.] [Citation omitted.] We do not think that in enacting [the credit-for-time-served provision of article 42.03 of the

13

A trial court may deny bail under Texas constitution article I, section 11b if a person (1) who is accused in Texas of a felony, (2) is released on bail pending trial, (3) has his bail subsequently revoked for a violation of a condition of release, and (4) is found to have violated conditions that relate to the safety of a victim or the safety of the community. Tex. Const. art. I, § 11b. In the capital murder case, Appellant is a person (1) who was accused in Tarrant County, Texas, of the felonies of capital murder and aggravated robbery; (2) was "released on bail pending trial" via his juvenile predelinquency adjudication hearing release; (3) had his "bail"/juvenile predelinquency adjudication hearing release subsequently revoked, as reflected by Appellant's continuous confinement since July 20, 2017, for violating a condition of his release—including cutting off his ankle monitor and fleeing;[5] and (4) was specifically found by the trial court in finding of fact 8 to have violated a condition that relates to the safety of the victims and of the community.[6] For purposes of article I, section 11b

code of criminal procedure] the [l]egislature intended that an individual initially detained as a juvenile and later certified an adult, then prosecuted and sentenced accordingly, should be treated any differently than one who is initially detained as an adult.

*Green*, 688 S.W.2d at 557.

[5]Appellant violated many other conditions of his release as well.

[6]Appellant allegedly committed a second capital murder and an aggravated robbery during the approximately three-month time period he was fleeing before he was apprehended; the trial court made a finding that the nature of Appellant's alleged offenses mandated consideration of the safety of the victim and the community in determining bail and that the trial court had considered this factor.

14

of the Texas constitution, Appellant has effectively been "released on bail pending trial" in the capital murder case; Appellant violated the conditions of his release, fled, and allegedly committed multiple additional felonies demonstrating his danger to the community. We hold that the trial court did not abuse its discretion by denying Appellant's application for a pretrial writ of habeas corpus and by denying bail under article I, section 11b in the capital murder case. *See id. See generally Ex parte Shires*, 508 S.W.3d 856, 865 (Tex. App.—Fort Worth 2016, no pet.) (looking at the legislative history of section 11b and stating that "the legislature recognized that when an accused has demonstrated a reluctance to abide by reasonable conditions of bond, considerations of the safety of victims . . . and the safety of the community as a whole should be considered before releasing the defendant into the community again").

We overrule the portion of Appellant's sole issue challenging the denial of his application for a pretrial writ of habeas corpus seeking bail in the capital murder case.

## 2. The Arlington Aggravated Robbery Case

Because Appellant's juvenile predelinquency adjudication hearing release was based on the capital murder case, not the Arlington aggravated robbery case, Texas constitution article I, section 11b does not support the trial court's decision to deny bail in the Arlington aggravated robbery case. That is, Appellant was never granted juvenile predelinquency adjudication hearing release in the

15

Arlington aggravated robbery case, so he cannot be denied bail based on a violation of conditions of release that were never imposed.

The State argues that "extraordinary circumstances" exist authorizing the trial court to deny bail in the Arlington aggravated robbery case. The State candidly acknowledges, however, that this bail exception has been very rarely utilized—only in one case.[7] We decline to apply the "extraordinary circumstances" exception here, if in fact such an exception still exists. We hold that the trial court abused its discretion by denying Appellant's application for a pretrial writ of habeas corpus seeking reasonable bail in the Arlington aggravated robbery case. *See, e.g.*, Tex. Const. art. I, § 11 ("All prisoners shall be bailable . . . ."); Tex. Code Crim. Proc. Ann. art. 1.07 (using similar language); *Ex parte Davis*, 574 S.W.2d 166, 168 (Tex. Crim. App. [Panel Op.] 1978) ("The general rule favors the allowance of bail."); *Gutierrez v. State*, 927 S.W.2d 783, 784 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (holding that appellant was entitled to pretrial bail under the Texas constitution because none of the constitutional exceptions to bail applied).

We sustain the portion of Appellant's sole issue challenging the denial of his application for a pretrial writ of habeas corpus seeking reasonable bail in the Arlington aggravated robbery case.

---

[7]The State cites *Mills v. State*, 626 S.W.2d 583, 584 (Tex. App.—Amarillo 1981, pet. ref'd).

## IV. CONCLUSION

Having overruled the portion of Appellant's sole issue challenging the trial court's denial of bail in the capital murder case, we affirm the trial court's order denying Appellant's application for a pretrial writ of habeas corpus in that case. Having sustained the portion of Appellant's sole issue challenging the trial court's denial of bail in the Arlington aggravated robbery case, we reverse the trial court denial of Appellant's application for a pretrial writ of habeas corpus in that case and remand that case to the trial court for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d); *Gutierrez*, 927 S.W.2d at 784 (remanding case to trial court to set bail when appellate court held appellant was entitled to have bail set).[8]

PER CURIAM[9]

PUBLISH

DELIVERED: August 16, 2018

---

[8]Appellant urges this court to set his bail, contending that if these cases are remanded for the trial court to set bail, the amount set by the trial court will be unreasonably high. We will not so presume. We give the trial court the first opportunity to set reasonable bail.

[9]Pursuant to Texas Rule of Appellate Procedure 2, the court on its own initiative, for good cause, has suspended the operation of Texas Rule of Appellate Procedure 47.2(a) in this particular appeal.

17