

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00017-CR

———————————————

Ex parte Justin Michael Love

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 56,962-A

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

Appellant Justin Michael Love appeals the trial court's order denying habeas relief and holding him without bail pending his retrial for engaging in organized criminal activity (drug dealing) with murder as the predicate offense. *See* Tex. Penal Code Ann. § 71.02(a)(1). He argues that (1) his bond-condition violations did not endanger the safety of the community and (2) his harassment of his estranged wife, Tamilyn, cannot constitute the commission of a new criminal offense because we have held a portion of that statute unconstitutional. *See Ex parte Barton*, 586 S.W.3d 573, 575 (Tex. App.—Fort Worth 2019, pet. granted). Because the record supports the trial court's finding that he violated conditions related to community safety, we need not address his second issue and affirm the trial court's order holding Love without bail pending retrial.

## I.  BACKGROUND FACTS

### A.  LOVE'S FIRST TRIAL AND OUR REVERSAL

Love stands charged with running a drug ring and orchestrating a marijuana sale to Dominic Thrasher that resulted in Thrasher's June 2015 death. As we recounted in our 2020 opinion, Love and two accomplices met Thrasher at a designated rendezvous, Thrasher got into a car with Love and his accomplices, and then Thrasher grabbed a bag of marijuana and took off. *Love v. State*, 600 S.W.3d 460, 466 (Tex. App.—Fort Worth 2020, pet. ref'd). One of the accomplices shot at Thrasher, possibly at Love's urging, and killed Thrasher. *Id.* Love subsequently fled to Colorado. *Id.*

2

A jury convicted Love of engaging in organized criminal activity and assessed a fifty-year sentence. *Id.* at 465. But in March 2020, we reversed the conviction because the trial court committed structural error by disqualifying his chosen counsel over a discovery violation. *Id.* at 484–85. We set his bail pending retrial at $500,000 because of the seriousness of the underlying murder offense, the fact that a jury had already found him guilty and assessed a fifty-year sentence, and his risk of a possible life sentence upon retrial. *Love v. State*, No. 02-19-00052-CR, *6 (Tex. App.—Fort Worth May 15, 2020, order). We asked the trial court to set the bond conditions. *Id.*

## B. THE BOND CONDITIONS

After a hearing, the trial court denied the State's request that Love submit to GPS monitoring upon release, but it restricted his movements. Love was required to stay at his grandmother Margie's home between 6:00 p.m. and 8:00 a.m.; outside of those hours, he was only permitted to drive to meet with his attorney, attend court hearings, report to the probation department, work at suitable employment, attend medical appointments, or perform "essential household duties such as grocery shopping." He was expressly prohibited from any contact with witnesses other than Tamilyn. Love did not contest or appeal the bond conditions, and he bonded out in mid-October 2020.

In early December, the State moved to declare the bond insufficient "and/or alternatively" require GPS monitoring. It alleged that Love had violated the curfew condition between November 30 and December 3. After a hearing, the trial court

amended the bond conditions to add GPS monitoring via an ankle bracelet. Love did not appeal the modified bond conditions.

### C. THE STATE'S MOTION TO REVOKE BAIL

In January 2021, the State moved for Love to be held without bond, alleging that he violated the bond conditions by (1) going to the home of witness Tammy Schlosser, Tamilyn's mother; (2) leaving Margie's home for purposes outside those permitted by the order, including visits to his girlfriend Amber Reynolds's home, Tamilyn's home and workplace, a local park, and a local restaurant; (3) failing to maintain suitable employment; (4) violating the law by harassing Tamilyn by calling her phone and text messaging her repeatedly; and (5) threatening to cut off his ankle monitor.

At the hearing, Love did not contest the State's evidence of his movements, including GPS records showing multiple visits to Reynolds's and Tamilyn's homes, sometimes for hours at a time; two visits to Tamilyn's work; a visit to a local park; and a visit to a local Texas Roadhouse. Love argued that he visited Reynolds's home often because he stored tools there that he used for his employment as a handyman for his bail bondsman. The bondsman, Maxie Green, admitted that they did not supply tools, though he denied the work required large tools, and Reynolds was unsure of the tools Love stored in her garage, naming "a couple of drills, the general things, . . . like wrenches and saws" and possibly a Shop-Vac. She and Tamilyn also testified that he spent time at their homes doing household repairs and tasks or repairs on Reynolds's car. Presumably, this occurred when the bondsman did not have enough tasks for him

4

and allowed him a day off, despite his submitted work schedule defining his work days as 8:00 a.m. to 5:30 p.m. Mondays through Fridays.

The State also presented evidence of Love's harassment of Tamilyn and his visit to Schlosser's home. On January 4, 2021, Love went to the mall with Tamilyn and their children, and then he went to his daughter's birthday party at Texas Roadhouse. Tamilyn described how Love became "very upset" at dinner and instigated a "verbal altercation" with Tamilyn over her new boyfriend (even though he was dating Reynolds). She testified that the altercation disrupted and distracted from the birthday party to the point their daughter complained that Love was "ruining her birthday."

His anger did not subside after dinner; he continued fighting with Tamilyn while she drove him home, and after she dropped him off, he began repeatedly calling and texting her. He used three different phones to call her "50[ or] 60 times," but she refused to answer and eventually blocked his numbers. Screenshots of text messages sent from Love that night were admitted into evidence—they showed him calling Tamilyn a stream of profanities and derogatory names in between professions of his love for her, apologies, and self-deprecation. In one text, he wished, "I hope you get cancer," and in another, he threatened to "cut off this [ankle] monitor." Later, because she had blocked his phone numbers, Love started emailing her, obtained a California phone number to continue calling her, and tried contacting her through their daughters' phones. He also visited her at work more than once to talk to her about their relationship.

On Friday, January 8, 2021, three of Tamilyn and Love's children spent the night at Margie's house with Love (their fourth child did not want to be around Love, according to Tamilyn). The next morning, just before 9:00 a.m., Love drove two of his daughters to Schlosser's home to pick up their scooters on their way to a local park. Schlosser, who is Tamilyn's mother and is listed on the State's witness list, was not home at the time, but her boyfriend was. At the hearing, Schlosser expressed her fear of retaliation by Love because she had provided information to law enforcement.

### D. THE TRIAL COURT'S BOND REVOCATION

The trial court found that Love had violated the bond conditions by failing to remain at Margie's home as required, by failing to provide an accurate work schedule, and by violating the harassment statute, thereby committing a new criminal offense. *See* Tex. Penal Code Ann. § 42.07. It further found that the violated conditions related to community safety. It revoked his bond and denied bail pending trial. Love applied for a writ of habeas corpus incorporating the revocation proceedings. The trial court denied the request for habeas relief, from which denial Love now appeals.

## II. LOVE VIOLATED CONDITIONS RELATED TO PUBLIC SAFETY

Love's two issues attack the trial court's findings that he violated conditions related to public safety. In his first issue, he designates the findings as erroneous because there was no showing by the State that his bond-condition violations related to community safety. Because this is a misconstruction of the applicable constitutional

6

provision, we overrule his first issue, thereby rendering his second issue moot, and we affirm the trial court's order.

We review a ruling on a pretrial writ of habeas corpus for an abuse of discretion, viewing the facts in the light most favorable to the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). If there are no disputed facts and the resolution of the ultimate issue turns on an application of purely legal standards, our review is de novo. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999). We will uphold the trial court's judgment if it is correct under any theory of law. *Ex parte McIntyre*, 558 S.W.3d 295, 299 (Tex. App.—Fort Worth 2018, pet. ref'd).

The setting of bail is placed by statute within the sound discretion of the trial court. Tex. Code Crim. Proc. Ann. art. 17.15. It is the accused's burden to show that the trial court abused its discretion. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981). The Texas Constitution authorizes a trial court to deny bail altogether pending trial if it determines "by a preponderance of the evidence . . . that [the accused] violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community." Tex. Const. art. 1, § 11b.

Love's argument focuses on his assertion that the State "failed to prove," and the trial court failed to find, that his bond-condition violations "endangered the community or jeopardized the safety of any member of the community." But this is a misstatement of Section 11b, which we must interpret by the plain meaning of its words. *Johnson v. Tenth Judicial Dist. Court of Appeals at Waco*, 280 S.W.3d 866, 872 (Tex. Crim.

7

App. 2008).  Section 11b requires a showing that the violated *condition* relates to safety; not that the violation itself endangered another at the time it was committed.  Tex. Const. art. 1, § 11b.[1]  *See also Ex parte Davis*, Nos. 09-16-00397-CR, 09-16-00413-CR, 2017 WL 1433311, at *1, 5–6 (Tex. App.—Beaumont Apr. 19, 2017, no pet.) (mem. op., not designated for publication) (upholding denial of bail upon revocation after accused violated condition prohibiting his driving a vehicle where no evidence showed his driving actually endangered or harmed anyone); *Shires*, 508 S.W.3d at 865 (upholding denial of bail for accused sex offender after he violated conditions by consuming alcohol and driving while intoxicated without evidence that he had endangered or harmed anyone).

As relevant to this issue, Love was found to have violated the bond conditions (1) requiring him to remain at Margie's home "unless meeting with his attorney, appearing for court, reporting to CSCD as required by [the December 2020 bond-condition order], submitting to a urinalysis, working at suitable employment," or going to "work, the doctor, the dentist . . . [, or performing] essential household duties such as grocery shopping"; and (2) restricting his use of a motor vehicle to traveling in order to perform those tasks.  He violated those requirements by "[p]erforming chores" for

---

[1]As we have previously observed, when Section 11b amendments were proposed, "the legislature recognized that when an accused has demonstrated a reluctance to abide by reasonable conditions of bond, considerations of the safety . . . of the community as a whole should be considered before releasing the defendant into the community again."  *Ex parte Shires*, 508 S.W.3d 856, 865 (Tex. App.—Fort Worth 2016, no pet.).

Reynolds and Tamilyn, attending the birthday party at Texas Roadhouse, taking his children to the park, going to Tamilyn's work, and going to Schlosser's home to pick up the children's scooters, all tasks that the trial court concluded were not "essential household duties" or otherwise permitted by his bond conditions.

In addition to ensuring an accused's presence at trial—the primary purpose of bail—home confinement and electronic monitoring are recognized means of protecting the safety of the community while an accused awaits trial. Tex. Code Crim. Proc. Ann. arts. 17.40(a) (permitting imposition of "any reasonable condition of bond related to . . . the safety of the community"), 17.44 (allowing home confinement and electronic monitoring as a bond condition); *see also Ex parte Allen-Pieroni*, 524 S.W.3d 252, 255–56 (Tex. App.—Waco 2016, no pet.) (discussing trial court's discretion in setting pre-trial bond and determining GPS monitoring was inappropriate without evidence accused was a flight risk and neither charged offense involved violence or threats of violence); *Ex parte Anunobi*, 278 S.W.3d 425, 429 (Tex. App.—San Antonio 2008, no pet.) (upholding reimposition of home confinement to protect victims and community against accused's repeated thefts while awaiting trial). This is especially true in this case, where Love is accused of—and has been once convicted of—participating in the commission of murder, an indisputably violent crime. He also has a criminal history including unlawful possession of a weapon and burglary of a habitation, and he threatened to cut off his ankle monitor in the midst of harassing Tamilyn.

9

Love did not appeal the trial court's December 2020 modification of the bond conditions to require electronic monitoring, nor did he complain of the October 2020 requirement of home confinement.[2] He does not now complain about the bond conditions or dispute his violations of them. His argument is limited to whether his violations endangered community safety, but this is not the standard. The standard is whether the conditions he violated related to community safety, and the requirements of home confinement and electronic monitoring undoubtedly relate to community safety. Additionally, we agree with the State's assertion that accepting Love's interpretation of Section 11b would lead to absurd—and frankly, dangerous—results, requiring the trial court to wait for the accused's actions to harm his initial victim or the community at large before revoking the accused's bond and ordering him held without bail.

Viewing the evidence in the light most favorable to the trial court's decision, we cannot conclude that it abused its discretion by finding that Love violated bond conditions relating to community safety. Having so held, we need not address his second issue arguing that the trial court erred by finding that he committed a new

---

[2]On a related note, Love argued in his habeas application that the phrase "essential household duties" was unconstitutionally vague. He did not bring this argument at the time the condition was imposed, nor does he bring this argument forward on appeal. He therefore forfeited any such argument. *See, e.g.*, *Smith v. State*, 993 S.W.2d 408, 411 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (en banc op. on reh'g).

offense by harassing Tamilyn. *See* Tex. R. App. P. 47.1. We therefore overrule both of his issues.

### III. CONCLUSION

Having overruled each of Love's issues on appeal, we affirm the trial court's order denying his request for habeas relief.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 1, 2021