

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00053-CR

———————————————————

Ex parte Dequavious Eugene Sanderson

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 61176 C-1-2

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

Appellant Dequavious Eugene Sanderson is charged with aggravated robbery, burglary of a habitation, and evading arrest. He appeals the trial court's denial of his request to lower the bail on the aggravated-robbery charge from $200,000 to $25,000. But the record reveals that Sanderson did not meet his burden to show that the bail amount or conditions were unreasonable, so we cannot conclude that the trial court abused its discretion by denying the request. We therefore affirm its order denying habeas relief.

**Background**

**I. The charges and prior bail proceedings**

Sanderson is accused of participating in a string of convenience-store robberies and home burglaries in the Wichita Falls area. In the instant case, Sanderson is accused of robbing a convenience store at gunpoint with an accomplice. In a separate count but within the same cause number, he is accused of burglarizing a home at gunpoint with two accomplices; specifically, it is averred that the trio tied up and assaulted the homeowner and stole a rifle, cash, and a small baggie of marijuana. Later that day, Sanderson ran from police when they pulled over a vehicle he was riding in, and officers found in the vehicle a handgun, masks, clothes, and a duffel bag all consistent with

those used in the convenience-store robbery, as well as the burglary victim's wallet and rifle, a small baggie of marijuana, and a handgun matching that used in the burglary.[1]

He was charged with aggravated robbery, burglary, and evading arrest; bail was initially set at $1,000,000, $100,000, and $2,500, respectively, but the trial court twice modified the bail, setting it at $200,000 for the aggravated-robbery charge and $50,000 on the burglary charge.[2] It also set a geographic restriction requiring Sanderson to remain in Wichita County if released and required GPS monitoring upon release.

## II. Habeas proceeding

Sanderson applied for a writ of habeas corpus and requested that the trial court lower the aggravated-robbery and the burglary bails to $25,000 each. At barely over four record pages, Sanderson's case-in-chief at the habeas hearing is remarkably brief. He testified to his requests that bail be lowered to $25,000 each on the aggravated-robbery and burglary charges, that he not be required to wear an ankle monitor because it could impinge his efforts to obtain employment, and that he be allowed to live with his mother

---

[1]Sanderson faces additional charges of aggravated robbery and burglary in separately pending causes. In the aggravated-robbery charge, he is accused of robbing a different convenience store at gunpoint with an accomplice. In the same vehicle from which Sanderson ran, officers found clothes, masks, shoes, and a gun consistent with those used in the robbery and a Wells Fargo bank bag and cigarettes matching those stolen in the robbery. In the burglary charge, he and an accomplice are accused of following two homeowners to their home, confronting them in their garage at gunpoint, and shooting the wife in her leg.

[2]From the record before us, it is unclear whether the evading-arrest bail remained set at $2,500, but it is not relevant to our consideration of his appeal.

in Fort Worth.[3] Apart from that, he testified that he planned to get a job in trucking, driving a forklift, or in a "factory job," that he did not have money to hire an attorney, and that his family and friends would be contributing to his bond. He offered no testimony about any efforts to secure a bond.

On cross-examination, the State elicited testimony that Sanderson has prior convictions for evading arrest and unlawful carrying of a firearm. Sanderson also confirmed that, as of the time of the hearing and in addition to the charges in the instant case, he faced separate charges of evidence tampering, aggravated robbery, and burglary of a habitation. The trial court admitted into evidence without objection the arrest and probable-cause affidavits related to those charges. It also admitted evidence of bondsmen surrendering bonds eleven times on various felony and misdemeanor charges due to Sanderson's failures to comply with the bond agreements or his failure to appear in court.

The State also elicited testimony and offered evidence of Sanderson's misbehavior while in jail; as Sanderson admitted, he has had "bad times in there." These "bad times" included twice exposing his genitals to prison staff, once inciting a riot, and cursing and threatening to kill a staff member. Though the evidence showed that Sanderson had pleaded guilty to the charges, he averred that he did so only in order to avoid harsher punishments.

---

[3]The bond-condition requests were not part of his application for writ of habeas corpus.

The trial court agreed to reduce the burglary bail to $25,000, but it did not reduce the $200,000 aggravated-robbery bail due to findings that Sanderson is a flight risk with a "lengthy criminal history" and a demonstrated history of failing to comply with bond-agreement terms. It also found that his release would present a danger to the safety of the community. It imposed home-confinement, GPS-monitoring, and geographic-restriction conditions. Sanderson's appeal is limited to the trial court's denial of his request to lower the aggravated-robbery bail to $25,000.

## Discussion

### I. Applicable law and standard of review

We review a ruling on a pretrial writ of habeas corpus for an abuse of discretion, viewing the facts in the light most favorable to the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). If there are no disputed facts and resolving the ultimate issue turns on applying purely legal standards, our review is de novo. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999). We will uphold the trial court's judgment if it is correct under any theory of law. *Ex parte McIntyre*, 558 S.W.3d 295, 299 (Tex. App.—Fort Worth 2018, pet. ref'd) (per curiam).

Setting bail is a fact-driven determination that must be judged on a case's own unique facts. *Ex parte Cook*, No. 02-18-00537-CR, 2019 WL 2323643, at *3 (Tex. App.—Fort Worth May 31, 2019, no pet.) (per curiam) (mem. op., not designated for publication). We review the trial court's decision in setting a bail amount for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling.

*See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). We will not disturb the decision if it was within the zone of reasonable disagreement. *Ex parte Wood*, 308 S.W.3d 550, 552 (Tex. App.—Beaumont 2010, no pet.).

Bail is primarily intended to assure the defendant's presence for trial. *See* Tex. Code Crim. Proc. Ann. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). In setting bail, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's presence at trial. *See Ex parte Simpson*, 77 S.W.3d 894, 896 (Tex. App.—Tyler 2002, no pet.) (per curiam); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.). The accused has the burden to show that the bail amount is excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

The court's discretion in setting a bail amount is statutorily governed by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. Other circumstances to be considered include the accused's work record, family and community ties, length of residency, prior criminal record, and conformity with the conditions of any previous bond, as well as the existence of any outstanding bonds and aggravating circumstances involved in the charged offense. *See Rubac*, 611 S.W.2d at 849–50.

## II. Application

### A. Nature of the offenses

The nature of the offenses and the possible sentences are the "primary factors" we consider in evaluating a bail decision. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pets. ref'd). Sanderson stands charged with several serious crimes. If convicted of aggravated robbery or burglary as charged, he faces a possible life sentence and a fine up to $10,000; at a minimum, he faces a 25-year sentence. *See* Tex. Penal Code Ann. §§ 12.32, 29.03(a)(2), 30.02(d). His alleged involvement in a string of robberies and burglaries adds gravity to the accusations. Given the seriousness of the charges and the potential of a lengthy prison sentence, there is a heightened interest in securing Sanderson's appearance at trial. *See In re Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.). This factor weighs in favor of the $200,000 bail.

## B. Local ties

Sanderson established a lack of any local ties or work history in the Wichita Falls area and even requested to be able to live in Fort Worth without monitoring and possibly seek employment as a trucker. None of his family lives in Wichita Falls, save two young children he has not seen in over a year due to his incarceration. No evidence of his length of residency nor of any ownership of property in the area was admitted. This factor weighs against lowering bail.

## C. Ability to post bond

Sanderson testified that he cannot post bond in the amount set by the trial court, but he made no effort to demonstrate his or his family's efforts to obtain a bond or even contact a bondsman. *See Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd) (noting that it is incumbent upon the applicant to show that he has made an effort to furnish bail in the amount set). Even if we were to assume he cannot meet the $200,000 bail, that alone is not dispositive. *See Ex parte Jones*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991). A defendant's simple inability to meet the bail set by the trial court does not automatically render it excessive; to hold otherwise would completely eliminate the trial court's role in setting bond and place the accused "in the unique posture of determining what his bond should be." *Brown*, 959 S.W.2d at 372 (quoting *Miller*, 631 S.W.2d at 827); *see also Ex parte Branch*, 553 S.W.2d 380, 382 (Tex. Crim. App. 1977); *Ex parte Cardenas*, 557 S.W.3d 722, 734 (Tex. App.—Corpus Christi–

Edinburg 2018, no pet.); *Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.). This factor also does not weigh in favor of lowering bail.

### D. Other considerations

The trial court was presented with evidence of Sanderson's criminal history, his history of bond surrenders on multiple felony and misdemeanor counts, and his misbehavior while in prison. These factors further weigh against lowering bail.

### Conclusion

Having considered the relevant factors and considering the record in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion by declining to further lower the bail amount for the aggravated-robbery charge. We therefore affirm the trial court's ruling denying Sanderson's request for habeas relief related to the aggravated-robbery charge.

/s/ Elizabeth Kerr

Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 8, 2021

9