

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00020-CR

_____

CAROLYN RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 9
Tarrant County, Texas
Trial Court No. 1832044

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Tarrant County[1] jury convicted Carolyn[2] Rodriguez of interference with public duties[3] and recommended a sentence of thirty days' confinement and a fine of $750.00. *See* TEX. PENAL CODE ANN. § 38.15. Rodriguez appeals claiming (1) the evidence is insufficient to support the jury's verdict, (2) the trial court erred by denying Rodriguez's motion for new trial, (3) the trial court erred by resentencing Rodriguez and suspending execution of her sentence, and (4) the trial court erred by using some of Rodriguez's back-time credit toward the condition she serve ten days' in jail as a term of the community supervision. We overrule her points of error. Noting an error in the trial court's judgment, though, we will modify that instrument. We affirm the trial court's judgment, as modified.

## I. Background

Rodriguez maintained a YouTube channel where she posted recordings of Fort Worth police officers in the course of their duties or other events she considered of public relevance.[4]

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

[2]We use the spelling of Rodriguez's name from the documents in the record.

[3]In the same trial, the jury acquitted Rodriguez of false alarm or report. She had been charged with resisting arrest, but the State abandoned that charge before trial.

[4]At punishment, the State showed a video recording of Rodgriguez walking through the unattended yet open Tarrant County Facilities Management Construction Services office. Her narration claimed that many of the vehicles in the parking lot, which she filmed and posted to her channel, were "undercover" police vehicles. Finding no one in the building, she sat down at a computer terminal where she accessed the internet and opened her YouTube channel website. She then left a note on the desk that said, "CAROLINA IN FT WORTH WAS HERE!" For that act, she was convicted, in 2019, of breach of computer security. *See* TEX. PENAL CODE ANN. § 33.02.

Tiffany Michel,[5] a police officer with the Fort Worth Police Department (FWPD), testified that officers are trained to "instruct an auditor[6] to go elsewhere," and "they have to be given an opportunity to go somewhere where they can still film." Officers are "taught that merely yelling at officers, even using profanity, but [not] doing anything to prevent [officers] from duties, [is] not interfering."

Rodriguez was in a busy area of downtown Fort Worth around 3:30 a.m. on June 23, 2024. Police were investigating a hit-and-run incident, where the driver had abandoned his or her pickup truck in a parking lot and fled the scene.[7] Rodriguez stayed on the other side of the street from the parking lot where police were investigating the abandoned truck, and a tow truck had arrived and was getting into position to remove it. The State introduced a video composite exhibit that was created from the body-camera footage of Krueger,[8] surveillance videos, and Rodriguez's YouTube video posting. The beginning of that composite video exhibit (which is about seven-and a-half minutes long) is a segment from Rodriguez's YouTube broadcast, where her narration begins, "Nothing's goin' on, so I need to see if I can stir up some trouble over here" and then continues, "[Let's] see if our magic camera will run 'em off," referring to the police officers.

---

[5]Michel had "five or six prior interactions with" Rodriguez.

[6]Rodriguez and people who share this hobby are called "First Amendment auditors" by the police.

[7]Michel was one of the officers on scene investigating the hit-and-run incident. The information alleged Rodriguez interfered with Officer Matthew Krueger, who was in charge of this investigation.

[8]Krueger was conducting the investigation named in the information.

After some time, Rodriguez crossed the street and walked through the parking lot by the to-be-towed pickup truck and a few police officers, among whom were Michel, her partner, Officer Kyla Botts of the FWPD, and Krueger in his police vehicle. Rodriguez, unaware of the nature of the officers' work, tried to engage Michel and Botts, who were walking together in the parking lot.[9] At that point, Rodriguez was about fifteen feet or so behind the officers.[10] Rodriguez followed the officers, gradually getting closer to them. The officers, pursuant to their training and previous experiences with Rodriguez in similar circumstances, ignored her when she asked them how they determined whether a person had paid to park their vehicle in the lot. Receiving no response, Rodriguez called out, in a kind of singsong voice, "Help! Rape! Fire! Fire!" Gradually, Rodriguez closed the distance between her and the officers and called out, "Hey ladies, hey ladies." Still, the officers ignored her.

By that time, Rodriguez was a few feet away from the two officers and behind the pickup truck that was to be towed. Krueger exited his police vehicle, which was parked a few feet away from the officers and Rodriguez. He immediately engaged with Rodriguez in the following conversation:

[Rodriguez:]   Hey Krueger.

[Krueger:]   Carolyn, we're busy. Go to the other side of the street.

[Rodriguez:]   No I'm not going to. What for? There's no investigation, there's no nothing.

---

[9]Rodriguez narrated her video for her audience. She believed officers were towing vehicles that appeared to be legally parked. There was no indication any vehicle other than the one involved in the hit-and-run was being towed.

[10]We use the lined parking space markers in the video evidence to gauge Rodriguez's distance.

[Kreuger]   You can go to the other side of the street or you're gonna get arrested.  I'm not warning you again.

[Rodriguez:]   What are you talking about?

[Krueger:]   Go to the other side of the street right now.

[Rodriguez:]   Why?  Wait, tell me why first.

[Female Police Officer:]   We're doing an investigation.

[Krueger:]   You're under arrest.  Turn around.

Although not played for the jury, the full recording from Krueger's body camera shows Krueger cuffing Rodriguez's hands behind her and then taking her to the ground, face first.  From that video, it is clear Rodriguez momentarily lost consciousness and, upon coming to, was crying in pain.  Rodriguez suffered significant injuries when Krueger arrested her—a fractured orbital bone, dislocated elbow, and lacerated top lip.  Krueger was disciplined for his behavior in arresting Rodriguez.  About a week after the trial, Krueger was fired from the FWPD.  After trial, Rodriguez obtained documents from the City of Fort Worth describing Krueger's disciplinary reviews and ultimate termination from employment.

Rodriguez filed a motion for new trial, attaching the City of Fort Worth's documents regarding Krueger's discipline and termination.  At the hearing on her motion, Rodriguez also argued about the importance of documents she had subpoenaed before trial.  Two months before trial, Rodriguez had subpoenaed documents from the Irving Police Department (IPD).  According to statements made at the motion for new trial hearing, Krueger had previously been fired from the IPD for another incident involving the use of excessive force.  The IPD materials

5

were submitted to the trial court, before trial, for in camera inspection.[11]   The trial court told the parties, the day before trial, that it had reviewed the IPD documents and found nothing in their "hundred to 120 pages" that was subject to discovery.   Having never acquired the IPD documents, Rodriguez did not attach them to her motion for new trial.   The trial court denied that motion, and this appeal followed.

## II.      The Evidence is Sufficient

Rodriguez complains the evidence is insufficient to prove she committed interference with public duties.   She argues that no officers at the scene explicitly told her an investigation was being conducted, nor were there any circumstances or indicia of an investigation that would alert her that an investigation was being conducted.[12]   We do not agree with her assessment of the evidence.

### A.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt."  *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)).   "Our rigorous review focuses on the quality of the evidence presented."  *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)).   "We examine legal sufficiency

---

[11]The Honorable Brent Carr heard and ruled on Rodriguez's motion for new trial.  He was sitting for the Honorable Brian Bolton, who presided over the pretrial motions and both phases of the trial.

[12]Rodriguez argues, "[T]here were no cones, crime scene tape, police vehicles with emergency lights flashing, or officers standing guard that would clearly indicate [that] there was a crime scene."  She further argues that "no officers bothered to inform [her] that she needed to move away until Krueger aggressively approached [her]."

under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017) (citing *Moff v.*

*State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004)), *rev'd in part*, 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* at 297 (second alternation in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

### B.      Analysis

Under a hypothetically correct jury charge, the State had to prove that, (1) with criminal negligence, Rodriguez (2) interrupted, disrupted, impeded or interfered with (3) Krueger, a peace officer, (4) who was conducting a criminal investigation (5) by refusing a directive to move away from the scene of the investigation. *See* TEX. PENAL CODE ANN. § 38.15; *Trevino v. State*, 512 S.W.3d 587, 593–94 (Tex. App.—El Paso 2017, no pet.).

Rodriguez clearly did not abide by Krueger's commands to return to the other side of the street. Krueger plainly gave Rodriguez "a directive to move away from the scene of the investigation," as alleged in the information. Rodriguez answered, "No, I'm not going to." Krueger directed her two more times, and both times Rodriguez questioned him and his commands. It is true that neither Rodriguez nor Krueger raised their voices, and "arguing with the officers does not constitute an actionable offense." *Carney v. State*, 31 S.W.3d 392, 398 (Tex. App.—Austin 2000, no pet.). Neither is debating the officer, which may be a better

8

description for Rodriguez's tone. But nothing in the police action was a limit on Rodriguez's right to free speech.[13] However, she clearly refused Krueger's directive to move away from the scene of the investigation.

In *Trevino*, police responded to a report of a young lady threatening to kill or harm herself with a kitchen knife. *Trevino*, 512 S.W.3d at 590. At the scene, officers detained the young lady and attempted to escort her out of the house. *Id.* Trevino, the young lady's sister, blocked the front door, trying to prevent the officers from taking her sister. *Id.* Ultimately, Trevino pushed one of the officers, causing him to lose his balance. *Id.* The State charged Trevino with and convicted her of interference with public duties under Section 38.15. *Id.* at 592. The El Paso Court of Appeals found Trevino's act of pushing the police officer "in an attempt to impede his actions" to be "sufficient evidence that [Trevino] interfered with [the officer]'s investigation." *Id.* at 596.

*Trevino* took note of *Carney*. There, law enforcement attempted to execute an arrest warrant for Carney's wife at their home. *Carney*, 31 S.W.3d. at 393–94. Carney first told officers that his wife was not in the home, and he argued extensively with them about the validity of their warrant. *Id.* at 394. Finally, one of the officers testified that he "push[ed] [Carney] away" and "entered the house." *Id.* The information charged Carney with "blocking entry" of the officers. *Id.* at 396. There were inconsistencies in testimony from the officers regarding where they and Carney were standing throughout their encounter, but "[n]one of the armed officers expressly testified that [Carney] blocked their entry into the house by physical action,"

---

[13]*See* TEX. PENAL CODE ANN. § 38.15(d): "It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only."

9

and there was "nothing to show that the pushing or shoving of [Carney] was necessary to make entry." *Id.* at 398. As cited above, the *Carney* court held, "Under section 38.15, arguing with the officers does not constitute an actionable offense." *Id.*

By her conduct, Rodriguez clearly "refus[ed] a directive to move away from the scene of the investigation" of a hit-and-run incident from earlier in the morning. She complains that there was nothing in the area of the parking lot that would have informed her an investigation was afoot and argued that officers did not tell her anything about an investigation. Obviously, this disregards the conversation just before she was arrested. Krueger told her to move to the other side of the street and warned her she risked arrest if she did not comply, and one other officer informed her they were conducting an investigation. It is true, as Rodriguez states in her brief, that the exchange happened within the span of about thirteen seconds. That is simply a circumstantial matter we consider in evaluating the totality of the evidence. However, Rodriguez's degree of scienter did not require that she clearly appreciate the significance of the activities around her. It was enough that her conduct showed that she "ought to [have been] aware of a substantial and unjustifiable risk that the circumstances exist[ed] or the result would occur." TEX. PENAL CODE ANN. § 6.03(d); *see* TEX. PENAL CODE ANN. § 38.15(a) (the mens rea for interference with public duties is criminal negligence). "Just because [s]he did not intend the result does not change h[er] awareness and perception of the risk." *Still v. State*, 709 S.W.2d

10

658, 661 (Tex. Crim. App. 1986). By her conduct—not obeying Krueger's instruction—Rodriguez interrupted, disrupted, impeded, or interfered with the officers' investigation.[14]

The evidence was sufficient to support the jury's verdict. We overrule Rodriguez's first point of error.

## III. Motion for New Trial Properly Denied

In her second point of error, Rodriguez argues that the trial court erred to deny her motion for new trial, in which she claimed that information she obtained after trial satisfied the requirements for a new trial under the Texas Code of Criminal Procedure.[15] The documents she obtained after trial included the City of Fort Worth documents describing Krueger's use of force in arresting Rodrigez, discipline, and eventual firing from the FWPD. Part of her arguments were also based on documents she subpoenaed before trial from Krueger's previous employer, the City of Irving. The trial court received and reviewed the IPD documents in camera before voir dire and held that there was nothing discoverable in them. Rodriguez did not ask for the documents reviewed in camera to be included in the appellate record, precluding our review. After reviewing the record, we cannot say that the trial court abused its discretion in its ruling. We will overrule this point of error.

---

[14]If the purpose of the statute is to protect officers in the course of their duties and the integrity of their investigations, that is a legitimate public policy. In *Duvall v. State*, 367 S.W.3d 509 (Tex. App.—Texarkana 2012, pet. ref'd), this Court observed that the intent of Section 38.04 of the Texas Penal Code, evading arrest or detention, is "to deter flight from arrest or detention by the threat of an additional penalty, thus discouraging forceful conflicts between the police and suspects," and that the statute "supports an important public policy—encouraging suspects to yield to a show of authority by law enforcement." *Id.* at 513; *see* TEX. PENAL CODE ANN. § 38.04 (Supp.). While we are mindful of the language in *Trevino* and other cases such as *Duncantell v. State*, 230 S.W.3d 835, 841–42 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd), requiring some physical act or conduct to rise above the defense of speech, *see* TEX. PENAL CODE ANN. § 38.15(d), we still find that Rodriquez's defiance of Krueger's command was conduct that refused his directive and hence satisfied the *actus reus* required.

[15]*See* TEX. CODE CRIM. PROC. ANN. art. 40.001.

## A.     Standard of Review

"We review a trial judge's denial of a motion for new trial under an abuse of discretion standard." *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was unreasonable." *Id.* (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)). "A trial judge abuses his discretion in denying a motion for new trial when no reasonable view of the record could support his ruling." *Id.* We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party." *Id.* "At a motion for new trial hearing, the judge alone determines the credibility of the witnesses." *Id.* "Even if the testimony is not controverted or subject to cross-examination, the trial court has discretion to disbelieve that testimony." *Id.* "An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial court's ruling was clearly erroneous and arbitrary." *Adetomiwa v. State*, 421 S.W.3d 922, 927 (Tex. App.—Fort Worth 2014, no pet.) (citing *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013).

A defendant seeking a new trial must meet certain requirements.

Article 40.001 of the Code of Criminal Procedure provides, "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." To obtain relief under this provision, the defendant must satisfy the following four-prong test:

> (1)     the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

12

(2)    the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

(3)    the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

(4)    the new evidence is probably true and will probably bring about a different result in a new trial.

*State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017) (footnote omitted) (citation omitted) (quoting *Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014)).  "Motions for new trial based upon newly discovered evidence are not favored by the courts and are viewed with great caution."  *Frank v. State*, 183 S.W.3d 63, 71 (Tex. App.—Fort Worth 2005, pet. ref'd).

Further, when as here, the trial court makes no findings of fact regarding the denial of the motion for new trial, we ascribe to the court "implicit factual findings that support that trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported in the record."

*Holbert v. State*, 665 S.W.3d 120, 124 (Tex. App.—Amarillo 2023, pet. ref'd) (quoting *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005)).

**B.    Analysis**

On or about December 18, 2024, a few days after the jury found Rodriguez guilty, Krueger was fired from the FWPD.  Among the reasons for his termination was a finding that Krueger used excessive force in his arrest of Rodriguez.

Rodriguez filed a motion for new trial, alleging that that was newly discovered evidence.  She introduced three exhibits at the motion for new trial hearing:

13

- Defense Exhibit 1, containing reports from two of Krueger's FWPD supervisors detailing their investigations into and findings about Rodriguez's arrest (both recommending "indefinite suspension" or termination); a press release about Krueger's termination; and a summary report from an internal affairs report sustaining multiple allegations against Krueger;

- Defense Exhibit 2, containing an affidavit from a Lieutenant in the internal affairs division stating many of the facts detailed in the above reports and that Krueger was "indefinitely suspended" on December 18, 2024; and

- Defense Exhibit 3, containing an internal "use of force" (UOF) report that was initiated June 23, 2024, the day of the incident, that lists personnel involved, that was updated to reference the "UOF review board's findings," and that invites review, findings, and recommendations from the recipient.

However, Rodriguez spent much of the hearing on her motion for new trial arguing about a document not included in the record, Krueger's personnel file from the IPD, where Krueger worked before he was employed by the FWPD.

Rodriguez told the trial court at the hearing on her motion for new trial that Krueger's IPD file included information about an unrelated incident. However, the documents comprising the IPD file are not in the appellate record.[16]

---

[16]The record shows that Rodriguez subpoenaed the IPD information on October 30, 2024. The City of Irving moved to quash the subpoena on November 18, 2024. Irving emailed the subpoenaed documents to the trial court on December 9. On December 10, at a pre-trial hearing (voir dire and trial were held on December 11, 2024), the trial court told the parties it had "reviewed between a hundred to 120 pages of documents that were sent by the City of Irving." The court continued, "The Court did not find anything that must be disclosed. So we're not getting into these matters that . . . were submitted by the City of Irving. They're not subject to disclosure."

Rodriguez made no objection to the trial court's ruling and made no request for the documents to be sealed for appellate review. It is Rodriguez's burden to provide this Court with a sufficient record to determine the merits of her appellate complaints. *See London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016) ("Generally, the appealing party carries the burden to ensure that the record on appeal is sufficient to resolve the issues presented. The failure to provide a sufficient appellate record precludes appellate review of a claim."). "If documents have been submitted for in camera inspection, the complaining party must request that the exhibits be carried forward under seal so that the appellate court can evaluate this information." *Lesher v. Coyel*, 435 S.W.3d 423, 431–32 (Tex. App.—Dallas 2014, pet. denied); *see Hoyos v. State*, 951 S.W.2d 503, 513 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 982 S.W.2d 419 (Tex. Crim. App. 1998) ("The record reveals that the trial court considered the

14

## C. Impeachment is Not Grounds for A New Trial

New evidence will not warrant a new trial if, *inter alia*, it is "merely cumulative, corroborative, collateral, or impeaching." *Carsner*, 444 S.W.3d at 2 (quoting *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003)).[17] Reviewing the record and Rodriguez's arguments, we remain unconvinced that the evidence presented in the motion for new trial and hearing could have been used for anything beyond impeachment of Krueger, who did not testify at trial.

Rodriguez's new trial exhibits, summarized above, contained detailed reviews and critiques of Krueger's behavior in arresting Rodriguez and its aftermath. The documents found fault in Krueger's judgment and failure to de-escalate the incident. They include incident reviews from two of Krueger's superiors who both recommended indefinite suspension, which apparently is the equivalent of termination. There was a copy of the FWPD press release covering Krueger's termination. Rodriguez has not, though, established what relevance the information from the Fort Worth documents had towards her guilt or innocence. The information in the Fort Worth documents concerns only Krueger's behavior at and after the arrest of Rodriguez. The only possible use of the three defensive documents produced at the motion for new trial hearing was to impeach Krueger, who, again, did not testify.

---

evidence during an in camera inspection, but our record does not contain the evidence reviewed by the trial court during this inspection. The burden is upon appellant to 'see that a sufficient record is presented to show error requiring reversal.'" (quoting TEX. R. APP. P. 50(d), 49 TEX. B.J. 349 (Tex. Crim. App. 1986, repealed 2011))).

[17] As far back as the late nineteenth century, the Texas Court of Criminal Appeals held that "a new trial will not be granted for the purpose of procuring impeaching testimony." *Navarro v. State*, 45 S.W. 724, 725 (Tex. Crim. App. 1898).

Rodriguez argued to the trial court that the combined information from the cities of Irving and Fort Worth would show "a pattern of conduct," demonstrating that Krueger was "a hothead" who had used excessive force at least one other time before the arrest of Rodriguez in the Fort Worth parking lot. Rodriguez further argued that, without that information, she "would have no materials actually to review and be able to impeach should he -- he be dishonest." But there is the rub. Rodriguez has not presented any argument as to how the information, urged in the motion for new trial, had any use beyond impeachment. Not only did Krueger not testify at trial, but Rodriguez offers nothing but speculation that had he, Krueger would have presented some kind of false impression testimony that would have subjected him to impeachment. She argued to the trial court, "I wouldn't want to put a witness on the stand where I don't have all the answers to know if he's going to lie and -- perjure himself 'cause I -- I would have no impeachment material to present and impeach him on the stand." She continued, "[Without the information from Irving and Fort Worth], we would have no ability to impeach anything he said on the stand if he was called to testify with regards to, Hey, didn't this happen. He could sit there and say no." Yet, this has nothing to do with Rodriguez's guilt of the charged offense. Even without Krueger's testimony, the State was able to present sufficient evidence that Rodriguez refused a directive from Krueger to move away from the scene of the officers' investigation.

It is mere speculation that any of the information Rodriguez obtained after trial could have been used to bring about a different result at trial. Assuming without deciding that the IPD documents were newly discovered evidence and said what Rodriguez told the trial court, they

16

were only relevant to impeach Krueger. The trial court did not abuse its discretion in denying Rodriguez's motion for a new trial. We overrule Rodriguez's second point of error.

## IV.    No Abuse of Discretion in Resentencing

In her third point of error, Rodriguez complains of the trial court's sua sponte decision to suspend execution of her sentence and place her on community supervision for fifteen months. We discern no error on the trial court's part and overrule this argument.

The jury recommended a sentence of thirty days' in the county jail, and the trial court imposed that sentence. Rodriguez was taken into custody December 12, 2024. The trial court brought her back to court on December 16 and, on its own motion and over Rodriguez's objection, suspended her sentence and placed her on community supervision for fifteen months. The Texas Code of Criminal Procedure clearly authorizes this. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.201. At the resentencing hearing, the trial court cited *Ivey v. Texas*, 277 S.W.3d 43 (Tex. Crim. App. 2009).[18] Ivey "deliberately forwent filing a sworn motion with the jury [(which he had elected for punishment),] declaring that he had never before been convicted of a felony offense in this or any other state," and thus, the jury could not recommend that any sentence be suspended in favor of community supervision. *Id.* at 44. Though the jury recommended jail time and a fine, the trial court suspended Ivey's sentence and placed him on community supervision. *Id.* at 45. The Texas Court of Criminal Appeals held that it was within the trial court's discretion to place Ivey on community supervision "so long as the appellant met the criteria for community supervision" prescribed by the applicable statute. *Id.* at 52.

---

[18]*Ivey* applied the prior version of the statue, former Article 42.12, Section 3(a), of the Texas Code of Criminal Procedure. *See Ivey*, 277 S.W.3d 43.

Rodriguez, before trial, filed a sworn application for community supervision and requested that, if she were convicted, her punishment be assessed by a jury. However, she did not request that the punishment charge include the option to recommend a probated sentence and made a "strateg[ic] move forward" to "not ask the jury for probation." Notwithstanding, the trial court had the authority to suspend Rodriguez's sentence and place her on community supervision.

Rodriguez was charged with and convicted of the misdemeanor offense of interference with public duties. *See* TEX. PENAL CODE ANN. § 38.15(b). Therefore, Article 42A.201 authorized the trial court to suspend Rodriguez's sentence and place her on community supervision.[19]

> The judge of a court that imposed a sentence requiring confinement in a jail for conviction of a misdemeanor may, on the judge's own motion, . . . suspend further execution of the sentence and place the defendant on community supervision under the terms and conditions of this chapter if, in the opinion of the judge, the defendant would not benefit from further confinement.

TEX. CODE CRIM. PROC. ANN. art. 42A.201(b). Although the trial court did not explicitly find that Rodriguez "would not benefit from further confinement," it did find it was in the interest of the community. *Id.* "Because the trial court did not make explicit findings of fact in this case, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record." *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *see also Ex Parte Shires*, 508 S.W.3d 856, 860 (Tex. App.— Fort Worth 2016, no pet.).

---

[19]*See* TEX. CODE CRIM. PROC. ANN. art. 42A.201.

The trial court, explaining its purpose in placing Rodriguez on community supervision, said, "[T]he community is served best when the police are able to conduct investigations without the distractions of an external force or an external stimulus." The lower court also stated, "[T]he community is best served and best protected when . . . police officers and first responders are able to do their jobs without distractions from external stimuli." Some of the trial court's conditions for supervision included requiring Rodriguez to stay twenty-five feet from law enforcement officers if she were not seeking their assistance[20] and not to commit any offenses against the laws of the State of Texas or the United States.

Absent an explicit finding by the trial court that Rodriguez "would not benefit from further confinement," TEX. CODE CRIM. PROC. ANN. art. 42A.201(b), we will "infer[] the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings," *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

The trial court was within its discretion to place Rodriguez on community supervision. We overrule her third point of error.

## V. Complaint About Use of Back Time Not Preserved

Attendant to her third point of error, Rodriguez complains that the trial court erred when it applied her "jail time credit to a condition of community supervision." As noted above, on December 12, 2024, the trial court sentenced Rodriguez to thirty days' confinement in accordance with the jury's recommendation. Four days later, the trial court called the parties

---

[20]At the resentencing hearing, Rodriguez agreed with the trial court that such a condition was "a fair compromise."

back and suspended imposition of Rodriguez's confinement for fifteen months and required that she serve ten days in jail as a condition for the suspension of her sentence. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.302. The trial court said it would credit Rodriguez with ten days in jail, thus releasing her to community supervision that day. On appeal, she complains it was error to apply her "back time credit," i.e., her time served in jail prior to trial, to the ten days required as a condition of supervision. However, she made no objection to this order in the trial court. *See* TEX. R. APP. P. 33.1(a).

After announcing the suspension of her sentence and the requirement of ten days' confinement, the trial court listed several more conditions of Rodriguez's supervision. That elicited several complaints from Rodriguez, but she made no formal objections. Only after several conditions were discussed and imposed did Rodriguez object, "Your Honor, we object to any community supervision in this case and -- which would include all conditions."[21]

"'Shotgun' objections," generally citing "many grounds for [an] objection without argument," preserve nothing for appeal. *Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd, untimely filed); citing *Webb v. State*, 899 S.W.2d 814, 818 (Tex. App.—Waco 1995, writ ref'd).[22] To preserve a complaint for appellate review, a party

---

[21]Rodriguez's counsel made this objection when asked by the trial court his feelings on imposing a curfew on Rodriguez. In answer to the objection, the trial court said, "Okay. Well, you can object but -- specifically, about a curfew." This suggests the trial court sought specific objections to specific conditions. Thus, there was no objection to the use of back time that was "apparent from the context." *See* TEX. R. APP. P. 33.1(a)(1)(A).

[22]*See also Wright v. State*, No. 02-12-00057-CR, 2014 WL 261409, at *5 (Tex. App.—Fort Worth Jan. 23, 2014, no pet.) (mem. op., not designated for publication) (citing the same cases for the same proposition). Although without precedential authority, we take note of *Wright* as indicative of how the Second Court of Appeals might address this issue.

must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a).

Rodriguez did not object in the trial court to whether time served for pre-trial incarceration may be applied to sentences and conditions of supervision. Assuming without deciding there was some error in the trial court's ruling, the lower court was never presented with this specific complaint from Rodriguez or given an opportunity to remedy it. *See Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009). Rodriguez failed to preserve this complaint, and we decline to review it.

We overrule the fourth point of error.

## VI. The Judgment Must Be Modified

In our review of the record, we have found an error in the trial court's judgment. The trial court entered one judgment when it accepted the jury's verdict and sentenced Rodriguez accordingly. When it suspended Rodriguez's sentence and placed her on community supervision, it entered another judgment with the supervision conditions. That judgment is titled "Judgment of Conviction by Court – Waiver of Jury Trial." Although the trial court suspended imposition of the jury's recommended sentence, Rodriguez was still convicted by a jury.

This Court has the "authority to reform the judgment . . . to make the record speak the truth when the matter has been called to [our] attention by any source." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). The Texas Rules of Appellate Procedure also provide direct authority for this Court to "modify the trial court's judgment." TEX. R. APP. P. 43.2(b). We modify the trial court's judgment to state that it was a jury trial.

21

## VII.    Conclusion

We modify the trial court's judgment by deleting the heading "Judgment of Conviction by Court – Waiver of Jury Trial" and replacing it with "Judgment of Conviction by Jury."  As modified, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:        September 16, 2025
Date Decided:          November 24, 2025

Do Not Publish